LILLIAN I. POST et al., Appellees, v. GRAND LODGE ANCIENT ORDER OF UNITED WORKMEN OF IOWA, Appellant.

No. 40293.

SEPTEMBER 22, 1930.

REHEARING DENIED JANUARY 15, 1931.

*Utterback & Forrest,* for appellant.

*Nourse & Nourse,* for appellees.

MORLING, C. J.—Insured, in his application for the certificate sued upon, was asked and gave answer to certain questions, as follows:

"Have you had insanity, apoplexy, palsy, vertigo, convulsions, sunstroke, congestion, inflammation, or any other disorder of the brain or nervous system? No. B. Have you had asthma, consumption, spitting of blood, habitual cough, and expectoration, palpitation, or any disease of the throat, heart or lungs? No."

In the blank for the answer to a later request, namely, "Give name and address of your physician," a line was drawn with a pen, no name being given. At the end of the application, and immediately preceding his signature, was the following:

"I hereby certify that the answers to the foregoing questions are full, complete and true, and I hereby agree that the truth of each of said answers shall be a condition precedent to any binding contract or benefit certificate issued upon this application, and I hereby certify that there is nothing in my physical condition, family or personal history or habits of life that in any manner should prevent me from participating in the benefits of the Order."

Defendant's contention in this court is that the insured had been, prior to the application, suffering from vertigo, and that, by virtue of the answers and certificate quoted, there was a breach of warranty. On plaintiff's motion for directed verdict, the court said:

"There is some doubt in the court's mind whether, under the evidence in this case, the defendant has proven any false statement; but the court further finds that, if any false statements were made, they were not material * * *"

Defendant contends that the statements of the insured were warranties, and if false, that the policy was invalid, whether the false statements were material or not; and that, the court having given as its reason for directing verdict that the statements, if false, were not material, the judgment should be reversed.

If the verdict was rightly directed, the judgment must be affirmed though the trial court gave a wrong reason for its right conclusion.

The insured, Carl M. Post, was, at the date of his application, May 2, 1927, a physician, 46 years of age. The petition set out the contract, alleged in general terms that the insured had paid all premiums and performed all duties to be performed by him, and kept and carried the policy in full force, and that the policy was in full force at the time of his death. The petition was not assailed by motion or demurrer. The defense set up in the original answer was founded on fraudulent misrepresentation and concealment,—not on breach of warranty. On the date the trial was begun, defendant filed amended and substituted answer, in which it stated that "the certificate of membership sued upon was procured by misrepresentation, fraud, and concealment of the insured, as hereinafter set out * * * that the certificate of membership sued upon was procured by the making of certain warranties in the application, and that the insured was guilty of breach of warranties in procuring the said certificate, as hereinafter set out. * * * that the insured * * * represented and warranted in writing * * * that he had never had vertigo, inflammation, or any other disorder of the brain or nervous system, that he had never had palpitation or any disease of the heart or lungs; that he was not under the care of a physician;" that he filled out the blank application in answer to request for name and

address of physician by placing a dash in the blank left for that purpose. ''That the said Dr. Carl M. Post intentionally withheld and concealed the fact that he was then, and for a period of years from on or about January 20, 1924, had been, under the treatment of Dr. L. E. Verity, M.D., in the Battle Creek Sanitarium, Battle Creek, Michigan.; that he was suffering at said sanitarium with vertigo and sensation of fullness in the head and with a disease of the heart known as high blood pressure; * * * that Dr. Post concealed from the defendant all of these facts, and also expressly warranted and represented that he had had no disease of the heart; that said ailments and disease above mentioned were the contributing cause of his death. That each and every one of said representations was material to his being admitted to membership in defendant's society, * * * that each of said representations was false * * * that defendant did not know such representations were untrue, and did not discover the falsity thereof until after the death of the insured. * * * That Dr. Carl M. Post, in his application for membership and for beneficiary certificate, warranted that he had never had vertigo, high blood pressure, or any disease of the heart, and that he was not under the care of a physician, as hereinbefore stated; that said warranty was untrue * * * that said warranty was material to and was relied upon by the defendant in the issuance of the certificate sued upon. That, because of the breach of warranties * * * and because of the fraud and concealment aforesaid *' * * defendant avoided said policy. * * * offered to return [the assessments paid], and has continued to offer to return the same * * *'' The reply was a denial. By a later amendment, defendant alleged substantially the same matters as false representations.

The allegations of the amended and substituted answer and amendment were not separated into divisions, but were presented as a single defense, consisting of alleged false representations, breach of warranty, and rescission. False representations and rescission, of course, constitute an affirmative defense, which must be pleaded and proved. Breach of warranty must be pleaded affirmatively by defendant. 33 Corpus Juris 88.

The defendant argues that the certificate contained in the application, that the truth of his answers ''shall be a condition precedent to any binding contract, * * * makes the representations referred to a warranty.'' As conditions precedent, it would

be necessary for plaintiff, in pleading, only to "state generally that he duly performed all the conditions on his part."

"It is not necessary to state the facts constituting such performance." Code, 1927, Section 11206.

"If either of the allegations contemplated in the three preceding sections is controverted, it shall not be sufficient to do so in terms contradictory of the allegation, but the facts relied on shall be specifically stated." Section 11208.

By Section 11209, "any defense showing that a contract * * * sued on, is void or voidable * * * must be specially pleaded."

We do not pause to determine the question whether there was a warranty, or whether, if plaintiff had pleaded as a distinct defense the facts alleged to constitute a warranty and breach thereof, the burden of proof would have been upon plaintiff to sustain his general allegations of performance. See *Krause v. Modern W. O. A.*, 133 Iowa 199, 201; *Wilkins v. Germania Fire Ins. Co.*, 57 Iowa 529, 531; *Ballagh v. Interstate Bus. Men's Acc. Assn.*, 176 Iowa 110; *Brock v. Des Moines Ins. Co.*, 96 Iowa 39; *Ward v. Interstate Bus. Men's Acc. Assn.*, 185 Iowa 674; *Hart v. National Masonic Acc. Assn.*, 105 Iowa 717; 37 Corpus Juris 616; 32 Corpus Juris 1291; 33 Corpus Juris 108.

The defendant here chose to intermingle allegations of fraud and breach of warranty, and as ground for its alleged action in rescinding the contract *in pais*. The petition alleged the issuance of the certificate. The answer alleged that the certificate was procured by fraud and false warranties. Execution of contract is not disputed. The nonexistence of the contract was not asserted, but the theory of the defense as alleged, and as defendant presented its case at the trial, was that the contract was induced by fraud and false warranty, and was because thereof rescinded. Defendant voluntarily assumed the burden of proving these allegations as its defense. It may not change its theory on appeal. *White v. Melchert*, 208 Iowa 1404.

Defendant introduced the deposition of Dr. L. E. Verity, a physician of the Battle Creek Sanitarium, who testified:

"Dr. Post first came to the sanitarium January 20, 1924, * * * He complained of slight increased blood pressure and a slight vertigo,—more of a giddiness of the head than a true vertigo,—which condition was greatly aggravated by constipation.

Slight dyspnea on exertion. His health at that time was excellent. The physical examination did not show any organic disease. There was no enlargement of the heart or valvular disease, no evidence of decompensation, and the various kidney tests were normal. * * * Dr. Post complained of giddiness of the head, amounting to a slight vertigo, in 1924, and to a less extent in 1925. He did not complain of this symptom at all in 1926. * * * The next time that Dr. Post consulted me professionally was March 23, 1925. At that time his general health was good. He had noticed in the past few months, while he had been working unusually hard, that he had a slight giddiness. No other symptoms. * * * There was no enlargement of the heart. The heart sounds were distinct. No evidence of any valvular disease. No accentuations and no irregularities. No evidence of decompensation. Interrogatory 22. State whether or not he had any symptoms of vertigo at that time. A. None, except for the slight giddiness above mentioned, following his period of strenuous work. * * * The next time I treated Dr. Post was July 8, 1925. * * * The condition of the heart was unchanged. There were no symptoms of vertigo at that time. The next time I treated Dr. Post or examined him professionally was January 7, 1926. He had no complaint except a moderately increased blood pressure. The physical examination showed no evidence of heart disease. * * * but the history taken at the time of his next visit, January, 1927, shows he had visited Major's Clinic at Kansas City, and found that the liver extract reduced his blood pressure; but then he got a reaction in the form of marked vertigo, and the blood pressure was found much higher than formerly. * * * I did not find any indication of vertigo at any time by examination. * * * He remained at the sanitarium from January 7, 1926, to January 13, 1926. He was rather nervous and run down from overwork; and, following rest, treatments, and mild doses of luminal, he felt fine, and had no symptoms whatever. * * * He next returned to the sanitarium January 9, 1927. In the past few months, he noticed a slight return of his giddiness. His blood pressure readings * * * indicate, in the terms of a layman, that, following period of overwork, overworry, etc., that his blood pressure rises to a higher level than the normal, probably due to general spasm of the small vascular stream. Following rest and relaxation, his

blood pressure reduces considerably, and his general condition and symptoms are much improved.''

Insured, according to the proof of death, while playing golf stepped in a depression, and wrenched his hip, from which infection and abscess resulted. He was ill from October 8, 1928, to October 21, 1928, when he died. During that time, he was at the Battle Creek Sanitarium. Dr. Verity testified:

''I was attending physician during Dr. Post's last illness. The duration of his last illness at the sanitarium was from October 13, 1928, to October 21, 1928. The immediate cause of his death was abscess of the left hip. Toxic paralytic ileus and septicæmia. Interrogatory 39. Were there any predisposing or pre-existing causes which may have had influence in bringing about his final illness or hastening his death? A. I do not think so. * * * The reason for the contributing causes of death were abscess of the left hip, probably resulting in septicæmia, which was the factor back of the toxic ileus. * * * Interrogatory 46. State whether or not Dr. Carl M. Post ever had any insanity, apoplexy, palsy, vertigo, convulsions, sunstroke, congestion, inflammation, or any other disorder of the brain or nervous system prior to May, 1927. A. No, with the exception of the slight vertigo which has been mentioned above. * * * Interrogatory 47. Name such of the above diseases as he had prior to that time, if any. Answer. None. Interrogatory 48. Did he make complaint or consult you at any of your professional consultations with him, concerning his ailments, of any of those diseases? Answer. No. Interrogatory 49. If so, give date and the ailment. Answer. None. Interrogatory 50. In your medical treatment of him, did you inform him that he had any of the above diseases? Answer. No. Interrogatory 51. If so, name the disease. Answer. None. Interrogatory 52. State whether or not Dr. Carl M. Post had, at any time prior to May, 1927, asthma, palpitation, or any disease of the throat, heart, or lungs. Answer. No. During the history taking, he was asked a direct question relative to vertigo, and only complained of slight giddiness. That was in January, 1924, and to a slight extent in March, 1925. Interrogatory 53. Name such diseases, if any, that he had prior to May, 1927. Answer. None. Interrogatory 54. Did he complain of any such diseases to you when you were treating him as his physician? Answer.

No. Interrogatory 55. If so, give date. Answer. No dates. Interrogatory 56. Did you inform him, in the course of your treatment or consultation, that he had any such disease? Answer. No. Interrogatory 57. State whether or not Dr. Post ever consulted you professionally concerning or complained of suffering from any of the following diseases: vertigo, convulsions, or any disorder of the brain or nervous system; asthma, palpitation, or any disease of the throat, heart, or lungs, and if so, what was it? Answer. No. During the history taking, he was asked the direct question relative to vertigo, and only complained of slight giddiness.''

The deposition gives the blood pressure during these various times. Dr. Verity further testified:

''I would not say that a large percentage of people have vertigo, but slight vertigo is a common complaint. Vertigo or a sensation of fullness in the head will arise from overeating or indigestion. Yes, vertigo will arise from constipation. Yes, it is true that a large number of people have high blood pressure,— tendency to high blood pressure may certainly be aggravated by constipation. Yes, it is a fact that many men have high blood pressure and live for years. Yes, Dr. Post's high blood pressure responded readily to treatment. Yes, it is fact that, at that time, before Dr. Post left the sanitarium, his high blood pressure disappeared, or practically so, and his condition in that respect became normal. That was his first visit. Yes, it is fact that anxiety, worry, and work of a practicing physician often increases the blood pressure. That is also true of any person, in almost any profession or line of work. Fatigue is likely to aggravate an existing hypertension. Yes, in treating Dr. Post just before he died, I learned that he had recently suffered an accident. I believe that the accident is the factor which resulted finally in his death. At many examinations, his joints were always carefully examined, and we never found anything to suggest any previous disease of the hip joint. Within two weeks of the accident, Dr. Post was dead, and I feel sure that the cardiovascular condition did not cause his death. No, he did not die from vertigo. No, he did not die from heart disease. No, he did not die from cardiovascular disease. In my opinion, he died from abscess of the left hip, resulting in septicaemia and toxic ileus.''

The medical examiner's report, upon which the application was granted, is in the usual specific form. We assume that Section 8770, Code, 1927, making physician's certificate conclusive, is not applicable. It appears that the insured, about the time in question, took out a large amount of life insurance.

Defendant offered in evidence an exhibit which is said to be a letter from Dr. Verity. The offer was rejected, and defendant complains. The letter is not in the record. Apparently it would be but hearsay. Clearly, we cannot hold that the rejection of this letter was error. No other evidence of the physical condition of the insured or of the falsity of his representations or on the subject of fraud was offered.

Defendant did not undertake to enlighten the court as to the pathological meaning of the terms "vertigo" and "palpitation," as understood by the medical profession.

"Vertigo" is a term quite commonly used in the sense of "dizziness; giddiness; a condition in which the individual or the objects around him appear to be whirling about." Century Dictionary. Obviously, on the evidence, it was in this sense that the insured complained of "a slight vertigo,—more of a giddiness of the head than a true vertigo." Defendant's witness explicitly testifies to that which is commonly known: that "slight vertigo is a common complaint * * * will arise from overeating or indigestion * * * from constipation." The report "marked vertigo" at the Clinic at Kansas City was attributed to use of "liver extract." This is not incredible. The existence of lesion causing high blood pressure or any pathological defect is wholly unsustained by the testimony which defendant offers. The testimony offered by the defendant itself, and uncontradicted, is that the insured had not had vertigo, "with the exception of the slight vertigo which has been mentioned above,"—had made no complaint or consulted with a physician concerning that disease; that "he was asked the direct question relative to vertigo, and only complained of slight giddiness." Defendant suggests that the witness's letter, which is not in evidence, is stronger than his deposition; "that doctors will not give testimony against each other if there is any way of avoiding it;" that "the insured got $65,000 of insurance in various companies between the date of application for this policy and the date of his death, a little more than a year after this policy was taken out;" that vertigo "is an

affliction of the part of the brain known as the internal ear, and that vertigo is more of a signal of some other ailment * * * He may have any one of five diseases of which vertigo is an indication;'' that it is undisputed that the insured suffered for a long time with high blood pressure; and that his failure to give the name of his physician indicated that insured told the examiner that he did not have any physician. These propositions, except as to additional life insurance, are wholly conjectural; as is the further argument that the insured, instead of stepping into a depression, as stated in the proofs of death, had an attack of vertigo, which caused the fall and the injury which gave rise to the septicaemia that caused death. Dr. Verity testifies that a large number of physicians and surgeons have taken their vacations at the sanitarium and consulted there with regard to their own health.

A verdict in favor of the defendant would have been so contrary to the evidence that it could not have been permitted to stand.—*Affirmed.*

EVANS, FAVILLE, DE GRAFF, and WAGNER, JJ., concur.

GRIMM, ALBERT, and KINDIG, JJ., dissent.

GRIMM, J. (dissenting)—The defendant has properly interposed a defense of a breach of warranty, and sufficient evidence was introduced to necessitate the submission of that issue to the jury. The cause should be reversed.

I am authorized to say that Justices Albert and Kindig join in this dissent.