## No. 14,340.

NATIONAL SURETY CORPORATION *v.* W. G. HALL
DOING BUSINESS AS THE W. G. HALL GARAGE.
(109 P. [2d] 905)

Decided December 16, 1940.   Rehearing denied February 3, 1941.

Mr. JOSEPH W. HAWLEY, Mr. JEAN S. BREITENSTEIN and Mr. JOHN G. REID on petition for rehearing, for plaintiff in error.

Mr. FRANK H. HALL, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ACTION by defendant in error, plaintiff below, on a surety bond for alleged failure of the National Surety Company, defendant below, to comply with the terms of the bond. The National Surety Corporation, having previously assumed liability under said bond, intervened and demurred to the complaint, which demurrer was overruled. Trial began to a jury, but at the close of plaintiff's evidence, the National Surety Corporation moved for a nonsuit, which was denied. Plaintiff then asked for an order directing the jury to return a verdict in his favor. The motion was sustained, the jury so directed, and judgment was entered in favor of plaintiff for $2,000 damages, interest and costs of suit. Reversal is sought on a writ of error.

Reference will be made to plaintiff in error as the company, and to defendant in error as Hall.

The portions of the bond about which the litigation centered were as follows:

"The National Surety Company (Surety), in consideration of the payment of the premium of Fifteen Dollars ($15.00), and payable on the seventh day of August, during each and every year that this bond shall continue in force, hereby agrees to make good within sixty (60) days after receipt of proof satisfactory to it, any loss not exceeding during its entire period of suretyship, Two Thousand Dollars ($2,000), which M. G. Hall Garage, Employer, may sustain by reason of any act of larceny or embezzlement of Lawrence Hugh Jones Employee, in

the performance of the Employee's duties as bookkeeper and cashier, at Trinidad, Colorado, in the Employer's service, committed alone or in connivance with others, after the 7th day of August, 1928, and before the termination of this bond, subject to the following express conditions, which shall be conditions precedent to any recovery hereunder: * * *

"3rd: The Employer, upon becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall immediately notify the Surety at its Home Office, by registered letter, giving all known particulars, and shall within sixty (60) days after discovery of any loss, file with the Surety a sworn, chronologically itemized statement thereof, and produce for investigation all books, vouchers and evidence in the Employer's possession which the Surety may require. * * *

"6th: The Surety's liability hereunder shall cease immediately, as to subsequent acts of the Employee: (a) Upon discovery by the Employer of any evidence of loss hereunder through, or dishonesty of any Employee, while so employed or otherwise; (b) The Employee leaving this position for any reason, and the Employer may cancel this bond at any time by written notice to the Surety; (c) Fifteen (15) days after receipt by the Employer of written notice from the Surety of its desire to withdraw as Surety; (d) Upon the Employee entering into partnership relations with the Employer; and any claim of the Employer against the Surety must be duly presented to the Surety, as above provided, within three (3) months after any termination of the Surety's liability, or within three (3) months after the date of expiration of each and every period of twelve months from the date hereof, during the continuance of this bond, as to the acts or defaults of the Employee, committed during any such period of twelve months.

"7th: No action or proceeding shall be brought hereunder, unless commenced within a period of six (6) months after the date the Employer shall have given

notice of such claim as required hereunder. Should any limitation set forth herein, be void under the law of any place governing the construction hereof, then such limitation shall be the shortest period permitted by such law.

"8th: This bond shall be void, unless it be duly executed by the Employee * * *."

The bond was issued and delivered to Hall—who, for the purpose of this opinion, was one and the same as defendant in error—August 15, 1928, and was in full force and effect until terminated—as to subsequent acts—August 7, 1935, by mutual consent. During all of this time the Paramount Oil Company, of which Hall was the manager and secretary-treasurer, with headquarters in the Hall Garage in Trinidad, Colorado, had been operating from that place of business. Hall "was answerable for the safekeeping of the property and funds of the [Paramount] company," and all of its books were kept, and its business transacted, at the Hall Garage. During the time the bond was in force, Lawrence Hugh Jones, bookkeeper and cashier for Hall, mulcted funds of the Paramount company to the extent of about $7,500, the theft being in various amounts during each of the years covered. No loss was discovered until about April 1, 1936, when Jones, after severing his employment with Hall, left a note informing his employer of his thefts. Notice of claim was given April 6, 1936, and the company denying all liability under paragraph "6th" of the bond, this suit was filed July 2, 1936.

The company sums up its case as follows: 1. Is the company liable for acts of its principal to one other than the obligee named in the bond? 2. Was the loss to Hall contemplated under the terms of the bond? 3. Was notice of loss given or suit instituted within the terms of the bond? 4. Was it proper to admit any evidence of loss for any calendar year, three months after the close of that year?

■ 1. The interrogatory as stated above is too broad in its implication, in that it is disclosed by the record that Jones was engaged in performing duties for Hall, and not for the Paramount company as the question would imply. In other words, Jones worked on the books of the Paramount company as a part of his duties as bookkeeper for Hall, such work being clearly within the language of the bond "in the performance of the employee's duties as bookkeeper and cashier, at Trinidad, Colorado, in the Employer's service." The application for the bond is not before us, so we are not advised as to what representations were made to the company as to the scope of Jones' duties, but since there was no change in his work at the time the bond was written or at the time it became effective, we must assume that the company was aware of those duties and knew that they were included in the risk that it undertook to cover. The only change in the scheme of operation was that the name of the Paramount company was changed from "Paramount Distributing Corporation" to "Paramount Oil Company." There was absolutely no change as relating to Hall's management of, and responsibility for, the books. Counsel for the company admits that the Paramount company's books were continually in Hall's possession and that Jones was the only bookkeeper employed in the place when the bond was issued. The attempted segregation of the risk because of separate legal entities is not persuasive, and does not relieve the company of liability. See *Isaac Upham Co. v. United States F. & G. Co.*, 59 Cal. App. 606, 211 Pac. 809.

■ ■ 2. Was the loss to Hall contemplated under the terms of the bond? We are definitely of the opinion that it was. That Hall was responsible to the Paramount company is not questioned.

Counsel for the company directs attention to the fact that two sets of books were kept, and contends that since the peculations were from the Paramount company, the W. G. Hall Garage suffered no loss, as the dis-

crepancies appeared in the Paramount, and not the Hall, books. This contention fails in view of the fact that the loss is charged against Hall on the books of the Paramount company, and the mere fact that there is a possibility of the Paramount company being reimbursed by other surety does not relieve Hall from his responsibility for the loss. "Recovery on the bond of one officer does not prevent recovery on the bond of another for the same default." 50. C.J. 86, §136, citing *National Surety Co. v. Bank* (Tex. Civ. App.), 244 S.W. 217. We need not anticipate the conditions of the ultimate adjustment as between Hall and the Paramount company on the $7,500 loss, charged to Hall. Under the terms of the bond the surety agrees to make good any loss which the W. G. Hall Garage may suffer by reason of "any act of larceny or embezzlement of Lawrence Hugh Jones employee * * * as bookkeeper and cashier * * * in the Employer's service." There is no ambiguity, either in the language or meaning, of this provision, and, consequently, Hall's loss clearly was covered.

3. Was notice of loss given or suit instituted within the terms of the bond? This is the most difficult question presented, but we are persuaded that the company may not escape liability on the ground of the time element. It relies on paragraph "6th" of the bond, as quoted above, the opening words of which are to the effect that the company's liability shall immediately cease, as to subsequent acts of the employee. We could terminate our discussion here, as there is nothing before us concerning any subsequent acts of the employee, and from a logical standpoint we could disregard the entire paragraph. However, we will consider the language used therein, upon which the company so explicitly relies, beginning "and [this word "and" is significant here because under the usual sentence construction that would link this clause with the language immediately preceding which would at once dispose of the company's contention, because that would limit this entire

clause to "subsequent acts of the employee."] any claim of the employer against the surety must be duly presented to the surety, *as above provided.*" Italics ours. The only possible reference to previous matter these italicized words can have is to some language having to do with the filing of claims, and checking back we find no such language until we come to paragraph "3rd" — nothing in paragraph "4th" involved here — which we quote again, in part: "The Employer, upon becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall immediately notify the Surety * * *." This, of course, would make the meaning of the bond obvious, that Hall did not have to take any steps until he became aware of the loss. No contention is made, nor could any be successfully made, that the words "as above provided" have any relationship to subdivisions (a), (b), (c) in the succeeding "6th" paragraph, hence the antecedent must be as above indicated. Counsel for the company is clearly in error when he says that this provision in paragraph "6th", upon which reliance is placed, is an independent condition, because it is elemental that all provisions in a bond must be construed together and each provision, if possible, must be given some force and effect in relation to other provisions. This is true even though some provisions are made "conditions precedent" as is paragraph "6th".

Assuming, as counsel contends, that Hall was negligent as to the discovery of loss (which the trial court did not believe), the bond is not conditioned on that element, and since the company wrote the contract and could have included a provision to that effect, the omission will not be supplied by construction. The same is true as to the company's contention that discovery must be made within the three months mentioned in the "6th" paragraph.

The Supreme Court of Minnesota in commenting upon similar provisions contained in a bond of the National Surety Company said: "We cannot concede, in the light

of the other provisions above quoted, that it was the intention to bar recovery for improper acts of Ericson which had occurred during the time that the bond was in force. If such was the intention it should have been evidenced by clear and appropriate language. The suggestion that the language 'termination of the surety's liability' means termination of liability as of the expiration date of the bond, regardless of when the improper acts were committed and regardless of when they were discovered, we cannot approve. If the language of the bond is ambiguous—open to more than one construction —it should be construed against appellant, who chose the language used and issued the bond, and in favor of respondent." (Citing cases). *Cary v. National Surety Co.,* 190 Minn. 185, 251 N.W. 123.

The above conclusion is fortified, we think, by the language used in paragraph "7th" of the bond here, to the effect that suit may be brought within six months after the employer has given "notice of such claim as required hereunder." The word "hereunder" includes the whole undertaking, and again, the words "such claim" would refer back to paragraph "3rd". In the case at bar, as has already been noted, the discovery was made about April 1st, the company notified April 6th, and suit filed on July 2nd, which, we feel, satisfied the "conditions precedent" set out in this bond if the language regarding filing claim by the employer "upon becoming aware of any act etc.," is to be accorded any meaning at all.

■ 4. Coming now to objections to the evidence. Counsel for the company, relying on the last clause in paragraph "6th," objected to evidence of any item which was not embezzled "within three (3) months after the date of expiration of each and every period of twelve months from the date hereof during the continuance of this bond, as to the acts or defaults of the employee, committed during any such period of twelve months." The court overruled the objection and permitted evi-

dence of all of the thefts occurring during the life of the bond. We do not feel that the court erred in this ruling for the reasons set out above relating to the third question pertaining to discovery, and for the further reason that while the acts may have taken place prior to January 1, 1936, the default did not occur until about April 1, 1936. The Supreme Court of Kansas in construing almost identical language contained in a surety bond of this same company said: "It is a continuing contract of insurance, beginning at the date provided for in the policy, and continuing as long as annual premiums are paid (and for 60 days after the last·payment), unless liability thereunder is terminated or ceases because of some one, or more, of the conditions of the policy. These conditions, so far as here material, are: First, that the employer, upon becoming aware of any act giving rise to a claim under the policy, or facts indicating such acts shall notify the insurer. * * * In this case appellant concedes that this notice was given in accordance with the provisions of this condition. Second, the insurer's liability shall cease, as to subsequent acts of the employee, in events (a), (b), (c) (paragraph 6), but in (c) is included two provisions, in the alternative, as to time for presenting claims, (1) within three months after discovery of default, (2) or within three months after the end of the year within which such default was made. The default in this case was discovered in February, 1924, and claim was made within the three months required by this condition of the bond; in fact, it was made within one month. Perhaps it is more accurate to say the "default" occurred in February, 1924, for it was at that time his previous misapplication of the bank's money was discovered and demand made for its return. The failure to return the money on demand was the default which caused financial loss to the bank." *Docking v. National Surety Co.,* 122 Kan. 235, 240, 252 Pac. 201, 204.

160

■ The point is made that the bond fails because not executed by Jones. Such execution here was clearly waived. 25 C.J. 1090.

■ Much stress is laid by counsel for the company upon our holding in Thomas-Hickerson Motor Co. v. Central West Cas. Co., 96 Colo. 493, 45 P. (2d) 631, as a basis for the reversal of the judgment in the case at bar, but we think counsel himself has pointed out the distinction which justifies a different conclusion. He says, speaking of the Thomas-Hickerson case, "The only controversy was over the date of the cancellation or termination of the bond," and a specific provision of the contract in that case read: "In the event of the cancellation or termination of this bond as to any employee, whether by notice or otherwise, the right to make a claim hereunder as to such employee shall cease at the end of six months after such termination." Under that language it could with propriety be held, as the court did, that no claim could be urged after six months, while in the case at bar the limitation clause provided, *"of such* claim," "such" referring back to paragraph "3rd" as above pointed out.

The trial court did not err in allowing interest under the attendant circumstances.

Judgment affirmed.

Mr. Justice Otto Bock dissents.

Mr. Chief Justice Hilliard and Mr. Justice Francis E. Bouck not participating.