## Fidelity & Deposit Co. of Maryland v. Citizens Nat. Bank of Somerset.

Jan. 27, 1942.

As Modified on Denial of Rehearing April 28, 1942.

307

Ben D. Smith for appellant.

B. J. Bethurum for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant has appealed from a judgment of $2,600 rendered against it in the Pulaski Circuit Court in favor of appellee. The action was based upon a bond of indemnity executed by appellant to appellee indemnifying the latter against the direct loss of any property through any act committed by any of appellee's employees, such as robbery, burglary, larceny, theft, etc., of money, securities or other valuables not exceeding $30,000 in value. The facts and circumstances out of which the controversy arose are these:

In September, 1938, and sometime previous thereto, J. Ernest Sears was cashier of appellee bank and also committee of W. O. Poynter, an incompetent, and secretary and treasurer of the Pulaski County Stockyards Company. Sears had charge of certain funds belonging to Poynter, the incompetent, and kept his trust account in appellee bank, and also the account of the Pulaski County Stockyards Company, of which he was secretary and treasurer.

On September 1, 1938, Sears drew a check for $2,500 on the trust account belonging to the incompetent and signed it "J. Ernest Sears, Committee for W. O. Poynter, Incompetent," and placed it to the credit of the Pulaski County Stockyards Company. At that time the Pulaski County Stockyards Company had a balance to

its credit of $149.67 which balance, plus the $2,500 check, then amounted to $2,649.67. At the close of banking hours on that day the Stockyards Company had a balance of $1,435.16 to its credit, thus indicating that $1,214.51 had been checked out by the Stockyards Company on that day. On April 1, 1940, Sears received a government check payable to him as committee for Poynter which he endorsed and placed to the credit of his personal account, which amount plus the $2,500 check mentioned above, aggregated the sum of $2,600 of the trust funds of the incompetent which Sears diverted, as stated above.

About May, 1940, Sears became insane and J. S. Cooper was appointed committee of Poynter, and upon investigation of the books and accounts of the trust funds of the incompetent, and of the accounts of the Pulaski County Stockyards Company, it was discovered that Sears was short in his account as committee in the sum stated above, and also short in his account with the Pulaski County Stockyards Company. Cooper, as committee, brought suit on the bond of Sears which he had executed as such committee, making the sureties on said bond party defendants. Appellee admitted liability to the committee of the incompetent and also to the Stockyards Company and made settlement with each of them. Appellant admitted liability on its bond to appellee bank to the extent of $30,000 less, however, the $2,600 shortage of Sears' account as committee of Poynter, and refused to pay the same, and appellee then brought this action against appellant to recover the $2,600.

Appellant demurred to the petition and without waiving same filed its answer in three paragraphs. In the first paragraph the bond and the terms thereof were admitted, but it alleged that it had no knowledge or information as to the alleged wrongful withdrawal of the funds by Sears, and in the second paragraph it was alleged that Sears was cashier of appellee bank; committee for W. O. Poynter; and secretary and treasurer of the Pulaski County Stockyards Company, a corporation, and as such he had the right and authority to withdraw funds as committee, which withdrawal was by check properly signed as committee for Poynter; that he had authority to endorse checks payable to the Pulaski County Stockyards Company and make deposits to its credit; that the check was properly endorsed and deposited to

the credit of said company; that the accounts of the committee and the Stockyards Company were both carried in appellee bank, and when Sears withdrew the funds by check from the committee account he was acting as committee; that when he made the deposit to the account of the Stockyards Company he was acting as an officer of said company; that the account of the Stockyards Company was not overdrawn on the date the deposit was made, which deposit was checked out in the usual course of business, and that the bank had no notice or knowledge of the alleged wrongful diversion, and had no part in it and received no benefit therefrom, and therefore the bank was not liable to the committee and appellant is not liable to the bank.

In paragraph three appellant alleged that the bank sustained no loss and that if the money had been wrongfully transferred from the account of the committee for Poynter to the Stockyards Company account, the bank still had the money and it was its duty to have withdrawn this amount from the Stockyards Company account and redeposit it to the committee account, which action it failed and refused to take; that the bank wrongfully assumed the liability and not only paid the money back to the committee but made some kind of settlement with the Stockyards Company and, therefore, the bank is barred and estopped because if it should be adjudged that the bank sustained a loss the appellant would be subrogated to the right of the bank to recover from the Stockyards Company and it would have no remedy because of such settlement by the bank with the Stockyards Company. A demurrer was filed to the second and third paragraphs of the answer, which demurrer was overruled and an order entered denying the affirmative allegations of the answer, thus completing the issues.

Most of the pertinent facts are stipulated and agreed to by the parties, but some evidence of witnesses was taken. The chancellor found and adjudged that appellant was liable to appellee for the $2,600 sued for and entered judgment accordingly.

It is stipulated by the parties, and the additional evidence of the officers and employees of the bank so show, that none of the officers or employees of the bank knew or had knowledge of Sears' wrongful manipulation of his accounts as committee, nor of the Stockyards Company account. Hence, the question to be determined by

us is whether or not the bank is liable because of Sears' position as cashier. As to the $100 item represented by the government check payable to Sears as committee which he deposited to his personal account, it is virtually admitted in brief of appellant that the face of this check and its endorsement by Sears as committee and the placing of it to his personal account was notice to the bank and it is liable therefor. We will confine our discussions to the $2,500 check drawn by Sears on his trust account as committee and placed to the credit of the Stockyards Company.

Appellant pleads in its answer, and so insists in its brief, that the bank was not liable for the act of Sears with reference to the $2,500 check and it voluntarily assumed liability therefor when in law there was no liability and since the bank could not have been required to pay this amount to Poynter's committee or estate, same does not come within the purview of the bond and, therefore, appellant is not liable to the bank therefor. This contention is based upon the theory that Sears had the right to draw checks on his account as committee, and being secretary and treasurer of the Stockyards Company he had the right to deposit the amount of the check to the credit of the company and, when he drew the check and signed it he was acting in his capacity as committee of Poynter and not in the capacity of cashier or representative of the bank and, in depositing the proceeds thereof to the account of the Stockyards Company, he was acting as an officer of the company.

It must not be overlooked that Sears was acting in a dual capacity, one as committee and the other as cashier of the bank, and his acts pursuant to the authority of his respective positions must not be confused or intermingled. It may be conceded that when drawing and signing the check Sears was acting as committee, but in making the entries on the bank books whereby he placed the amount of the check to the credit of the Stockyards Company, he was acting in his capacity as cashier or agent of the bank, since his authority as committee went no further than to authorize him to draw and sign checks. It surely could not be contended that a committee, trustee, or other fiduciary would have the right to go into a bank and make entries upon the bank books without authority as an officer or employee of the bank.

In Mitchell v. First National Bank of Hopkinsville,

203 Ky. 770, 263 S. W. 15, 16, B. S. Ezell drew his check for $1,500 payable to "G. L. Campbell, Agt.," and Campbell delivered the check and his individual passbook to the bank and the latter placed the proceeds of the check to Campbell's individual credit. At that time Campbell's account was overdrawn and he drew checks at once on this account and at the close of business on that day his account was again overdrawn $22.42. Campbell's principal who was entitled to the fund represented by the check, sued the bank to recover therefor. The bank denied liability upon the ground that it had no notice of the wrongful act of Campbell. The bank was successful in the lower court but the case was reversed on appeal to this court upon the ground that the word "agt." written on the face of the check was at least constructive notice that the fund represented by the check was not the fund of Campbell but that of his principal. The court said:

> " 'The fact that the instrument on its face is made payable to a person in his fiduciary capacity is notice that the payee is acting in such capacity and that he can only give title or deal with such instrument for the benefit of the person whom he represents.' Eaton & Gilbert on Commercial Paper, 370.

> " 'Agt.' in this check was notice to appellee that possibly this money was impressed with a trust and the bank should have inquired as to the nature thereof. Many cases can be cited supporting this doctrine. In Taylor v. Harris' Adm'r, 164 Ky. 654, 176 S. W. 168, the First National Bank of Paducah was required to account for a note of $3,000 which it had purchased of J. B. Harris, guardian of Foster Lee Threlkeld, and the proceeds of which note it had placed to the individual credit of Harris and had allowed him to withdraw on his individual checks. This case cites the case of United States Fidelity & Guaranty Company v. People's Bank, 127 Tenn. 720, 157 S. W. 414. In that case the check was payable to H. L. Turner, and showed that it was trust funds held by him for Turner, Fryer, and Gladys Fryer, in which case the Tennessee court said:

> " 'The entry of the check to the personal credit of the guardian by the bank was a conversion of the fund by both. Upon the making of such entry the bank became a trustee of the fund, and became liable

therefor, and could be saved from being compelled to account to the wards therefor only upon the guardian's subsequent true administration thereof and accounting therefor.' ''

See, also, First National Bank of Central City v. Stringer et al., 207 Ky. 230, 268 S. W. 1101. Many other domestic cases of a similar nature might be cited but we deem it unnecessary to encumber this opinion by citation of cumulative authorities.

Appellant attempts to distinguish the authorities, supra, from the present case. While the precise facts involved in the cases are somewhat different, yet we think the facts in the present case bring it within the principle announced in the cases, supra, with reference to knowledge or imputed knowledge of the bank. In the case at bar the check showed on its face that it was for the benefit of the Stockyards Company and the signature thereto showed that it was drawn on the fiduciary or trust fund and the entries in the bank books showed that the proceeds of the check had been placed to the credit of the Stockyards Company. We think these facts were sufficient to constitute notice to the bank the same as the word "Agt." appearing in the face of the check involved in the Mitchell case, supra, constituted notice to the bank that the funds were being misapplied.

It is thus seen that aside from the fact that Sears was acting as cashier of the bank in making the entries on the bank books, all the other officers of the bank knew or should have known of the wrongful diversion of the trust funds of the incompetent.

It is further argued for appellant that even though the authorities cited and relied on for appellee, including the ones we have cited, might constitute authority for holding the bank liable for the acts of Sears under the statutory law at the time those opinions were rendered, but the 1930 Acts of the General Assembly of Kentucky, c. 14, modified the rule with reference to liability of a bank for the misapplication of fiduciary funds by an officer of the bank who was also a fiduciary and in charge of such funds in care of such bank. Section 4711-4, Kentucky Statutes, as amended by the Acts of 1930 and relied on for appellant, reads:

"If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal

by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary, *unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith.*" (Our emphasis.)

It is to be noticed from the language we have emphasized in the section of the statute, supra, that the bank will not be relieved of liability for the acts of a fiduciary if he, the fiduciary, takes the instrument with actual knowledge of a breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. Of course Sears did not accept the $2,500 check from a third party, but as cashier of the bank he wrongfully diverted the proceeds of the check knowing that he was committing a breach of duty and, therefore, his act in so doing amounted to bad faith.

Further complaint is made by appellant that its rights were prejudiced by the settlement between the bank and the Stockyards Company. It is insisted that such settlement destroyed its right of subrogation of appellant to recover the money from the Stockyards Company. It appears that this contention is based upon the theory that when the bank discovered that Sears had diverted the incompetent's funds to the account of the Stockyards Company it was the duty of the bank to then transfer it back to the credit of the incompetent's account.

It is to be noticed that the diversion of the $2,500 to the Stockyards Company account was not discovered by the bank until May, 1940, which was one year and eight months after the diversion had been made. Of course the Stockyards Company had received the $2,500 to which it was not entitled as between it and the incompetent. A copy of the written agreement between the bank and Stockyards Company, whereby they settled their accounts arising out of Sears' diversion of the funds of the Stockyards Company, is filed with the record only as evidence that such settlement was made between the parties, but it does not disclose how or in what manner the

314

Stockyards Company accounted to the bank for the $2,500 of the incompetent's funds received by it. It is recited in the settlement that the bank placed to the credit of the Stockyards Company the sum of $2,700 in full satisfaction of its proper balance at that time.

In the absence of any showing how the $2,500 was accounted for or settled between the bank and Stockyards Company, we assume that that item was properly settled between the parties and the bank still owed the $2,500 to the committee for the incompetent. In the condition of the record before us we are not convinced that appellant's rights were prejudiced by the settlement between the bank and the Stockyards Company.

For the reasons stated, the judgment is affirmed.