**WOODDALE, INC., Appellant,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellee.**

**No. 18383.**

United States Court of Appeals Eighth Circuit.

May 17, 1967.

Rehearing Denied June 2, 1967.

Ronald D. Olson, of Carlsen, Greiner & Law, Minneapolis, Minn., for appellant.

Paul Ahlers, of Bannister, Carpenter, Ahlers & Cooney, Des Moines, Iowa, for appellee.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

We are faced with an action upon a fidelity bond arising out of alleged misappropriations by the President of the appellant company.[1] Appellee denied liability claiming, among other things, that the President was not an "employee" as defined under the policy but was specifically excluded thereunder as a "contractor." Trial was held to the court alone and at the close of all the evidence the court entered judgment for the appellee bonding company.

Wendell Caldbeck was engaged in a general contracting business in the City of Des Moines since 1946, operating under the name of Caldbeck Construction Co. In 1959, Caldbeck entered into an agreement with the Watson Construction Co., a Minnesota corporation, and its President, Frederick O. Watson, that the latter would co-sign all performance bond applications with Caldbeck Construction Co. This arrangement was set up because of Caldbeck's poor financial condition. Under the contract Watson Construction Co. received three-eighths of the gross profits and Caldbeck Construction Co. received five-eighths on the bonded jobs. Caldbeck independently did the work and was in no sense aided by the Watson Company in the construction work.

In April 1961, Caldbeck, Inc. was formed. Originally Wendell Caldbeck was one of the directors of the corporation. However, at the organizational meeting he resigned as a director but continued as President. The stockholders and incorporators of Caldbeck, Inc. were Frederick O. Watson and two business associates, J. Gordon Campbell and Robert L. Maddox. Maddox was a creditor of Caldbeck operating another construction company named Allied Construction Services, Inc. As of May 5, 1961, these three men comprised the Board of Directors. Only Watson, as Secretary-Treasurer, and Caldbeck, as President, had authority to sign checks on Caldbeck, Inc. An agreement was entered into by Watson on behalf of the new corporation with Caldbeck Construction Co. whereby the corporation would bid on all work requiring performance bonds and if a job was secured it would then be subcontracted to Caldbeck Construction Co. The performance bonds were then made out in the name of Caldbeck, Inc. A profit sharing agreement, similar to that which had existed between Caldbeck and Watson, was entered into by Caldbeck Construction Co. and the corporation on all bonded jobs.

After the formation of the corporation Caldbeck, as President, would make out an invoice under the name of Caldbeck, Inc. on all bonded jobs. Upon receiving payment from the owner, pursuant to the particular building contract, this money was deposited by Caldbeck into the Caldbeck, Inc. bank account. He would then in turn invoice Caldbeck, Inc. in the name of Caldbeck Construction Co. in an amount necessary for payment of bills on that particular job. He would then issue a check from Caldbeck, Inc. to Caldbeck Construction Co. for that amount.

In September of 1962 Mr. Watson conferred with a Mr. Lang and a Mr.

---

1. The appellant Wooddale, Inc. is the successor corporation to Caldbeck, Inc. and at all material times herein conducted its business under the name of Caldbeck, Inc., an Iowa corporation. We refer to it in its original name.

Lynn, agents of the bonding company, concerning a fidelity bond covering the operations of Caldbeck, Inc. Appellee claims that Watson at that time misrepresented that Caldbeck, as an employee, was being paid a commission by the corporation. Nevertheless, at that time the agents of appellee expressly told Watson to pay some sort of salary "to clarify the situation so there would be no problems." The corporate minutes on September 13, 1962, reflect that yearly salaries of $50.00 were to be paid to both Caldbeck and Miss Larson, a bookkeeper.

Some time in September 1963, and before December 3, 1963, Wendell Caldbeck, as President of appellant, wrote certain checks to Caldbeck Construction Co. from funds that were paid to Caldbeck, Inc. from a job known as "Wolkoff-Effress." This payment to Caldbeck Construction Co., pursuant to the directions of Caldbeck, Inc. and pursuant to the past practices of Caldbeck, Inc., was to be applied for the payment of labor and materials on this particular "Wolkoff-Effress" contract. The record is likewise undisputed that at the time that Caldbeck wrote these checks he knew that the funds from prior payments on that job had not been fully applied to the outstanding expenses but in fact had been used for his own personal use, as well as general expenses of Caldbeck Construction Co.

Subsequently, Caldbeck was discharged as President of the corporation. Caldbeck, Inc., as general contractor, recognizing its obligation took over the work on contracts which it had previously subcontracted to the defunct construction company.

Appellant filed suit under the bond for losses to the corporation in excess of $15,000.00.[2]

The trial judge entered his judgment on the ground that Caldbeck was not an "employee" of the appellant under the bond, that he was an "independent contractor" or "at most * * * a subcontractor."

The critical language of the bond appears in Section 3 of the contract defining "employee."

"Section 3. As used in this Bond, 'Employee' means any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Bond Period and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission, merchant, consignee, contractor or other agent or representative of the same general character."

We would agree with the trial court that the language of the above clause is not ambiguous. An "employee" is simply defined thereunder as, (1) any natural person; (2) while in the regular service of the insured; (3) in the ordinary course of the insured's business; (4) compensated by salary, wages or commissions; (5) whom the insured has the right to govern and direct in the performance of such service; (6) who is not acting as a contractor.

■ Where the language of a policy of insurance is clear and unambiguous, courts should give effect to the contractual language in harmony with plain meaning. Indemnity Insurance Co. of North America v. Pioneer Valley Savings Bank, 8 Cir., 343 F.2d 634.

■ Appellee relies on the general proposition that upon findings of fact, this court is bound by such determination unless clearly erroneous. However, where the facts are undisputed and the evidence is reasonably susceptible of but

**2.** Appellant later amended its prayer to $21,735.44. Caldbeck had previously sold certain equipment to appellant to "minimize his liabilities." This sale, without written release or discharge, is characterized by Caldbeck's attorney as a "full settlement." However, the trial court did not pass upon the defense of "accord and satisfaction" and we likewise do not reach this issue.

a single inference, the question whether the relationship of employer or independent contractor exists, is one of law for the court. Sullivan v. General Elect. Co., 6 Cir., 226 F.2d 290; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549, 552. See also Anderson v. Elliott, 244 Iowa 670, 673, 57 N.W. 2d 792, 794. Cf. Minneapolis St. P. & S. S. M. R. Co. v. Metal-Matic, Inc., 8 Cir., 323 F.2d 903, at 912. Furthermore, it is within the competence of appellate courts as an issue of law to review the interpretation given a written contract. Standard Title Ins. Co. v. United Pac. Ins. Co., 8 Cir., 364 F.2d 287.

## THE CORPORATE "SHELL"

Appellee contends the corporation was a facade whose true personality was concealed and misrepresented by Watson. Caldbeck, Inc. maintained its office at the same place of business as Caldbeck Construction Co. Appellee maintains it had no payroll, estimators or workmen, owned no office furniture, paid no rent, and did not maintain a telephone listing. But fraud was not pleaded or suggested as a defense in appellee's pleadings below.[3] See Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 275, 48 A.L.R.2d 1058; Post v. Grand Lodge A.O.U.W., 211 Iowa 786, 232 N.W. 140, 142; Peacock & Peacock, Inc. v. Stuyvesant Ins. Co., 8 Cir., 332 F.2d 499, 505. Nor do we find appellee's attack on the corporate "shell" or "dummy" as a persuasive inducement to concluding that Caldbeck was not an employee of Caldbeck, Inc.

 The bond application disclosed, or at least would put any reasonable person on notice, that Caldbeck, Inc. was formed for a limited purpose. There were no laborers or workmen listed and only the President and Secretary-Treasurer were indicated as employees. Lang stated he also knew that all or most contracts obtained by the corporation would be sublet to Caldbeck as an individual and that Caldbeck, Inc. would either pay the materialmen or pay Caldbeck who then in turn would pay the various costs of the job. The agents of appellee company were not strangers to the operation of Caldbeck, Inc. They had written performance bonds on construction jobs for over a year prior to its application for a fidelity bond. Appropriate here is the Iowa Supreme Court's holding in Sherman v. Harbin, 125 Iowa 174, 100 N.W. 629, wherein the headnote summarizes:

"The obligee in a fidelity bond is not bound to aid the surety in determining the propriety of entering into the contract, nor to warn him of the risk, when all the facts are as accessible to the surety as to the obligee."

See also Employers Liab. Assur. Corp., etc. v. Wasson, 8 Cir., 75 F.2d 749 at 753.

 A corporation is a fiction of "legal imagination" and is entitled to be treated as a legal entity under ordinary circumstances.[4] Where a person is "simply dealing with his own property through a corporate agency as absolutely as he might deal with it as an individual," the fiction is sometimes disregarded. Haynes v. Kenosha St. Ry. Co., 139 Wis. 227, 119 N.W. 568, at 571. Equity will not allow the corporate structure to be used to perpetuate a fraud or obvious injustice. However, the "corporate veil" cannot be removed merely to give a litigant an advantage at law when, in the absence of fraudulent allegations, the parties deal at arm's length.[5]

"[I]t leads nowhere to call a corporation a fiction. If it is a fiction, it is a fiction created by law with intent that it should be acted on as if true." Klein v. Board of Tax Sup'rs, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140.

---

3. Appellees claim that their letter of September 10, 1962, affirming that Caldbeck would be covered under the bond was obtained through the misrepresentation that he was to be paid by commissions. We deem the letter immaterial to our holding here. We only observe that it was at Lang's suggestion that a salary arrangement be used to avoid any problems.

4. Justice Holmes' famous words come to mind:

5. The principle of law somewhat analogous is that "an insurance company issu-

It is true that business relationship between Caldbeck and Watson before the formation of Caldbeck, Inc. resulted in the same profit arrangement as the parties later enjoyed under the subcontract with Caldbeck, Inc. Mr. Lynn the branch manager of appellee said he knew *before* the issuance of the bond that the corporation was a "front" for Watson. Watson himself did not deny the purpose of the corporate entity. It was created upon the advice of attorneys to bid work in Iowa and to use the "name Caldbeck inasmuch as he was going to be subcontracting and actually doing the construction work in contact with the architect and owner." It also gave the Board of Directors of Caldbeck, Inc. direct control of monies from bonded jobs that were previously paid to and held by Caldbeck Construction Co. Corporations are accepted and recommended in the modern business world for many varied reasons. Ballatine, Corporations, § 1; Fletcher, Cycl. Corporations, § 5. The fact a corporation assumes a limited area of work that another entity or individual can do does not detract from its own *capabilities or responsibility* as a juridical personality. The formation of Caldbeck, Inc. created a new legal relationship between Caldbeck and Watson, as well as between Caldbeck Construction Co., the various bonding companies and all future contracting parties. And the record remains silent on any fraudulent design or concealment in the formation of Caldbeck, Inc.

## CALDBECK, THE "EMPLOYEE"

In determining whether Caldbeck was acting as a "contractor," or as a defined "employee" under the bond, resort must also be given to principles of the master-servant relationship under Iowa law. Tit. 28 U.S.C. § 1652. The Iowa Supreme Court has said:

"The factors for determining an employer-employee relationship are, (1) the right of selection, or to employ at will, (2) responsibility for the payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed." Prokop v. Frank's Plastering Company, 257 Iowa 766, 133 N.W. 2d 878, 883. See also Schlotter v. Leudt, 255 Iowa 640, 123 N.W.2d 434.

The apparent difficulty is that Caldbeck worked in a dual individual capacity as a contractor as well as the corporation's president. However, there is nothing within the bond that prevents an employee from serving two masters or in two distinct capacities. The essential requirement under this bond is that the loss arise out of the insured's employment. Appellant's argument, adopted by the trial court, is posited around the theory that Caldbeck's role as contractor was at all times controlling, overriding any duties with the corporation.

No authority is cited by appellee or found in the trial court's opinion to support the result reached below. Dual employment per se does not defeat coverage under a fidelity bond. American Employers Ins. Co. v. Cable, 5 Cir., 108 F.2d 225; National Surety Corp. v. Hall, 107 Colo. 150, 109 P.2d 905; Ft. Scott Bldg. & Loan Ass'n v. McAfee, 135 Kan. 355, 10 P.2d 851; Frederick Investment Co. v. American Surety Co. of N. Y., 314 Pa. 1, 169 A. 155; Fidelity & Deposit Co. of Maryland v. Citizens Nat. Bank, 290 Ky. 306, 161 S.W.2d 62; Aetna Casualty Surety Co. v. Peoples Bldg. & Loan, 194 Ark. 773, 109 S.W.2d 943.

In other areas of litigation involving dual employment, only periodic service regularly recurring to the employer's cause is sufficient for a legal determination that an individual is an employee.

---

ing a policy to a purported corporation cannot question its corporate existence." See Fletcher, Cycl. Corporations, § 3925; see also Union Pac. Lodge No. 17, A.O. U.W. v. Bankers Surety Co., 79 Neb. 801,

113 N.W. 263; National Surety Corporation v. Hall, 107 Colo. 150, 109 P.2d 905; American Employers Ins. Co. v. Cable, 5 Cir., 108 F.2d 225.

See, e. g., Dyer v. James Black Masonry & Const. Co., 192 Mich. 400, 158 N.W. 959. In Deecy Products Co. v. Welch, 1 Cir., 124 F.2d 592, 139 A.L.R. 916, the court was faced with the issue of whether a statutory clerk, who was a corporate officer, was an employee under the internal revenue code. The court applied the general legal definition of "employee" to determine the status. The clerk also worked as an attorney for the corporation and his job as clerk was only incidental to the post. He received no compensation as clerk but did as attorney. The court held that he was an employee in the capacity as clerk. The court pointed out that even though he worked only 35 minutes that year it did not make it "any less a rendering of services." The court further said:

> "The only thing that can be done is to examine the facts of each case and then determine whether there is present sufficient control and supervision to make one an employee. Here the clerk is subject to the board of directors, and the board can direct him in the performance of the duties of his office. Moreover, 'The clerk * * * shall perform such other duties as the directors shall from time to time prescribe.' The directors can tell the clerk in what books to keep the minutes and where to keep the record books. *It cannot be said that he has no superiors in the corporation who can give him orders.*" 1 Cir., 124 F.2d at 598 (Our emphasis.)

In Cowles v. J. C. Mardis Co., 192 Iowa 890, 181 N.W. 872, 884, an individual was deemed both a general contractor and the owner's agent since the owner retained some control over a portion of the work. This case concerned a question on a performance bond. The Iowa Supreme Court said:

> "The cases hold that there may be a dual character, or relation, in some cases, without necessarily creating a repugnancy or inconsistency; that is to some part of the work a party may be a contractor, and yet a mere agent or employee as to other work."

Caldbeck performed definite services to the corporation. He submitted all bids in the name of the corporation. He bid on only those jobs Watson, as a director of the corporation, approved. The fact that these bids were estimated and prepared by an employee of Caldbeck Construction Co. is not material. Any other subcontractor might do the same. Through his corporate agency, Caldbeck, Inc., and not Caldbeck Construction Co., became the contracting party. Caldbeck processed all invoices of the corporation to the owner and deposited all incoming checks to the corporate account. Upon invoice by Caldbeck Construction Co. he would then issue corporate checks to the construction company to be disbursed allegedly for work and material. Caldbeck was subject to the control, direction and ultimate discharge of the corporation and its board of directors. Under the circumstances we feel Caldbeck meets the requirements of an "employee" as defined under the terms of the policy.

## THE FIDUCIARY BREACH

Implicit in the court's holding that Caldbeck was not an employee is that the loss occurred in Caldbeck's capacity as a contractor rather than in the performance of his fiduciary duties for the corporation. Prior to the formation of the corporation if Caldbeck misdirected funds from a contract job to the detriment of the owner, Watson, or materialmen and workmen, his legal liabilities were governed under principles of a debtor-creditor relationship. However, as President of Caldbeck, Inc. misappropriation of monies could breach his fiduciary duty to the newly formed corporation. As an employee of the corporation he was not at liberty to write checks on the corporation from funds received on construction jobs until there was a proper invoice by the subcontractor Caldbeck Construction Co. showing the bills due and owing on the particular job. In addition, his instructions required disbursal of funds of Caldbeck, Inc. to be conditioned upon the directed payment by Caldbeck Construction Co. of the

outstanding bills on the bonded job. Again the facts are undisputed. The payment of the monies on the "Wolkoff-Effress" job to the general account of Caldbeck Construction Co. occurred during the time that Caldbeck admittedly had misappropriated other payments from the same job to his personal use. The lower court viewed this simply as a breach of contract by Caldbeck Construction Company with the corporation. However, knowledge and acquiescence by an officer of a corporation in his or another's dishonest activities in any other capacity *to the detriment of the corporation* constitutes, as a matter of law, a breach of his fiduciary duty to the corporation.[6] General Rubber Co. v. Benedict, 215 N.Y. 18, 109 N.E. 96, L.R.A. 1915F, 617; Maryland Casualty Co. of Baltimore, Md. v. Queenan, 10 Cir., 89 F.2d 155; Jackson Exchange Bank v. Russell, 181 Mo.App. 698, 164 S.W. 694; Ballantine, Corporations, § 78, at 202.[7]

A corporate officer's dealings with oneself is always subject to the closest scrutiny and skepticism. Atlas Coal Co. v. Jones, 245 Iowa 506, 61 N.W. 2d 663. Moreover, his knowledge of wrongful activity in his individual capacity is not notice to the obligee or his employer under the bond because he is acting at that time in an adverse capacity. See Fletcher, Cycl. Corporations, §§ 818, 819; Clapp v. Wallace, 221 Iowa

672, 266 N.W. 493, 495. The situation is no different than if Caldbeck as President of Caldbeck, Inc. was issuing checks to another contractor in privity with the corporation, who with the full knowledge of Caldbeck was misappropriating the money and not paying the obligations invoiced. If Caldbeck in this position sat back and condoned these acts or in any way had been a party or privy to these misappropriations, under such circumstances it would be obvious that he had breached his fiduciary capacity or duties. He would be every bit "particeps criminis and accomplice" of the contractor in the misappropriation of funds as if he were participating in it as a principal. The corporation is the ultimate loser. See Jackson Exchange Bank v. Russell, supra. The acts of Caldbeck, the individual, known to Caldbeck, as President, constituted a failure to faithfully discharge his fiduciary duties as President of the corporation and renders the surety liable under the bond.

Appellee raises other defenses by its pleading, which the trial court has not passed upon and which the parties have not briefed. Under these circumstances a final judgment cannot be rendered, so that the case is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

---

6. Justice Cardozo, describing the fiduciary's trust, said:
 "The trustee is free to stand aloof, while others act, if all is equitable and fair. He cannot rid himself of the duty to warn and to denounce, if there is improvidence or oppression, either apparent on the surface, or lurking beneath the surface, but visible to his practiced eye."
 Globe Woolen Co. v. Utica Gas & Elec. Co., 224 N.Y. 483, 489, 121 N.E. 378, 380.

7. Professor Ballantine writes:
 "A director of a corporation cannot remain silent, when he knows that a fraud is being attempted against the corporation and ultimately against its shareholders. It is his duty to acquaint the other officers of the corporation with the facts and to use every effort to prevent the consummation of the fraud. If he permits by passive acquiescence any part of the assets of the corporation to be fraudulently diverted or secret profits to be obtained he is guilty of a neglect of duty to the corporation for which he is liable in damages, notwithstanding the fact that he did not profit financially thereby." Ibid at 202.