**THIRD FEDERAL SAVINGS & LOAN ASSOCIATION OF CLEVELAND, Plaintiff-Appellee,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee,**

and

**J & V Mogilnicki, Inc., Third-Party Defendant,**

and

**James F. Rogers, Third-Party Defendant-Appellee and Cross-Appellant.**

Nos. 75-2004, 75-2005.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1976.

Decided Jan. 21, 1977.

Jay A. Hollingsworth, Hollingsworth & Hollingsworth, Cleveland, Ohio, for appellant.

Stanley J. Zablotny, Cleveland, Ohio, William T. Boukalik, Climaco, Goldberg & Boukalik, Cleveland, Ohio, for Third Federal Sav. & L. Ass'n of Cleveland, James T. Rogers, Cleveland, Ohio, for James F. Rogers.

Before CELEBREZZE,* PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

In this diversity action the district court, sitting without a jury, awarded damages to the plaintiff, Third Federal Savings & Loan Association (the Association) on its claim on a bond written by Fireman's Fund Insurance Company (Fireman's Fund). The district court found that the Association sustained losses within the coverage of the bond, primarily Clause (A) of the insuring agreement which provided:

* Judge Celebrezze did not participate in this decision.

FIDELITY

(A) Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others  .   .   ..

The holding of the district court was based on its finding that the third party defendant James F. Rogers, an appraiser and inspector who worked on a fee basis, was an employee of the Association.

The Association sustained losses on a number of construction loans which it made to the third party defendant J & V Mogilnicki, Inc. It advanced money to Mogilnicki in reliance on inspection reports prepared by Rogers and representations by the president of Mogilnicki that construction had reached certain stages on particular residences. When it was discovered that money had been advanced for loans on six vacant lots and far in excess of amounts permitted by the actual stage of completion of four others, the Association was required to liquidate these ten Mogilnicki loans, and two others where construction had been completed, at a loss. This action was brought to recover losses on the twelve construction loans and one non-construction loan which was liquidated at a loss when unpaid mechanics' and materialmen's liens were asserted against the mortgaged property. Mogilnicki had constructed the residence involved in the thirteenth claim, but Rogers was not involved. Fireman's Fund filed third party complaints seeking indemnification from Rogers and Mogilnicki.

At the beginning of the trial the district court announced that the issues would be tried separately. The issue of Fireman's Fund's liability to the Association would be tried first. If liability was found to exist, a separate hearing would be held on the issue of damages. Finally, the third party claims would be heard separately.

Following the district court's determination that Fireman's Fund was liable to the Association for losses on ten of the twelve construction loans and the non-construction loan sued on (164 Joseph Street), a hearing was held on the question of damages and they were fixed at $100,375.50. Thereafter the court, without further hearings, granted summary judgment on the third party complaints of Fireman's Fund against Rogers and Mogilnicki. Both Fireman's Fund and Rogers have appealed.

The parties agree that liability under the bond depends, with respect to the ten construction loan losses now in dispute, upon whether Rogers was an employee at the time he made false inspection reports. The evidence clearly supports the district court's finding that Rogers " .   .   did not personally inspect the various properties involved herein on which he turned in inspection reports verifying completion of construction when, in fact, construction had never been begun or was incomplete." Without detailing the basis for its finding, the district court held that Rogers was an employee of the Association; noting, however, that the degree of control exercised by the employer is the "predominant theme" of the cases dealing with the question.

The evidence disclosed that Rogers maintained an office as a real estate broker and appraiser in his home. Though he worked as a broker and appraiser for others, the bulk of his income during the years in question came from the Association. He was paid an agreed sum for each appraisal and each inspection which he made for the Association. This case concerns inspections only, and the procedure followed in connection with inspections was described in the testimony. Upon being notified by the secretary of the Association that an inspection was required, Rogers would be given a "Periodic Inspection Report." This was a form prepared by the Association. Such a report form was prepared for each construction loan, showing the location of the construction site. This form listed 62 items of work involved in constructing a building, with a series of blocks opposite each item. These blocks were in columns each of which was dated and represented an inspection. The inspector placed his initials at the top of the column for each inspection and his estimate of the percentage of completion on the date of inspection at the foot of the column. Rogers was required to travel to the site of the residence under construction and make

an inspection. After presumably making such an inspection he would return the report, with inspection data filled in, to the office of the Association. There was no testimony that he was given any instructions other than the date his report was required. Since the loan committee of the Association met on Mondays, Rogers often made appraisals and inspections on weekends when the Association offices were closed.

■ The appellants contend that the evidence does not support the district court's finding that Rogers was an employee of the Association. He was paid once or twice a month upon submission of statements to the Association listing the appraisals and inspections he had made since the last statement. He was never furnished with an employee's withholding statement (W–2). The Association did not withhold income tax or deduct Social Security employee contributions from his pay and made no Social Security employer contributions on his behalf. Furthermore, Rogers was not listed as an employee for purposes of workmen's compensation or unemployment compensation. Rogers was not entitled to fringe benefits such as health and life insurance and participation in a pension program, but it was testified that there were other part-time employees who did not share in these benefits. Rogers paid all of his expenses in connection with inspections and appraisals for the Association and did independent appraisals for other organizations. He had no set working hours. It is argued that all of these facts indicate that Rogers was an independent contractor rather than an employee of the Association. These factors are indicative of some relationship other than that of employer and employee. However, they are not sufficient by themselves to require such a conclusion.

The district court also found it to be "of critical importance" that the application which the Association prepared and filed with the agent of Fireman's Fund prior to issuance of the bond listed among its employees, "Edgar G. Robison . . . Appraisor [sic]." Robison was a full-time employee, and it was testified that Rogers replaced him and performed the same services for the Association that Robison had performed. The appellants point out, however, that the Association did not list another appraiser named Ebner who was working on a part-time basis at the time the application was filed. The secretary of the Association testified that Ebner did the same type work as Rogers, under the direction and control of the witness, and was paid in the same manner, but was not listed on the application "because he was not considered an employee." The district court reasoned that Fireman's Fund assumed the risk of loss from acts of "the bank's appraiser" and pointed out that the bond did not require the Association to notify the insurer of changes in personnel.

On the bond application the Association indicated that it did not require a rider covering "agent" who performed services in connection with the ordinary conduct of its business. Though the definition of "employee" in the bond included "conveyancers," described as persons who prepare deeds, check titles, or otherwise "assist the Insured in the making . . . of mortgage loans . . . ," no one was listed in this category on the application. The Association could have elected coverage for dishonesty or fraud of agents, but did not do so. It listed one full-time appraiser as an employee, but did not list a part-time fee appraiser because he was not considered an employee. Under these circumstances we find little support in the application for the district court's conclusion that the parties contemplated coverage for the acts of part-time as well as full-time appraisers. However, the dispositive question on this appeal is whether the district court was correct in holding that Rogers was an employee, not whether his acts would be covered if he was working for the Association in some other capacity.

In *William H. Sill Mortgages, Inc. v. Ohio Casualty Co.,* 412 F.2d 341, 344 (6th Cir. 1969), a case involving the same question

and facts similar to those now before us, the court wrote:

> Whether Stockford was an employee is a question of fact. The principal test of an employer and employee relationship is control. Under the finding of facts of the trial judge, which we find not to be clearly erroneous, Mr. Sill had a very close supervision and control over Stockford. Mr. Sill was in almost daily contact with Stockford instructing him and advising him with reference to processing mortgages through the Sill company. The findings of fact of the trial judge with reference to the employer and employee relationship are not clearly erroneous and they support the legal conclusion that Stockford was an employee of the plaintiff company within the meaning of the bond.

The *Sill* case applied Michigan law. The Ohio courts have also stressed control as the decisive factor in determining whether the relationship of employer and employee exists in a particular situation. The Supreme Court of Ohio stated the law in paragraphs 1 and 3 of the Syllabus of *Councell v. Douglas,* 163 Ohio St. 292, 126 N.E.2d 597 (1955), as follows:

> 1. The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control of, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor.
>
> \*   \*   \*   \*   \*   \*
>
> 3. Where one employs another to do certain work for him, the mere right reserved by the employer to direct as to the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work so as to

justify the conclusion that the relationship between the employer and the contractor is either that of principal and agent or master and servant. (Paragraph four of the syllabus in *Hughes v. Railway Co.,* 39 Ohio St. 461, approved and followed.)

In *Councell* the question was whether tort liability should be imposed upon one party for the acts of another through application of the doctrine of *respondeat superior.* The same test of the right to control the manner or mode of performing the work has been applied in workmen's compensation cases, *e.g., Bobik v. Industrial Commission,* 146 Ohio St. 187, 64 N.E.2d 829 (1946), and unemployment compensation cases, *Commercial Motor Freight, Inc. v. Ebright,* 143 Ohio St. 127, 54 N.E.2d 297 (1944).

In an action under the Federal Tort Claims Act this court found that the rule for determining whether a relationship of employer and employee exists is substantially the same under Ohio and federal law. The court cited *Bobik, supra,* and *Ebright, supra,* and adopted the following statement from an opinion of the Ohio Court:

> The general rule to determine whether a relationship is that of employer and employee or independent contractor may be stated as follows:
>
> "If the right to control the manner or means of performing the work is in the person for whom the work is performed, the relationship is that of employer and employee or master and servant; but if the control of the manner or means of performing the work is delegated to the person performing the work, the relationship is that of independent contractor." *Behner v. Indus. Comm.,* 154 Ohio St. 433, 437, 96 N.E.2d 403, 405.

*Fisher v. United States,* 356 F.2d 706, 708 (6th Cir.), *cert. denied,* 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966).

■ In offering coverage by separate rider for acts of agents who are not employees and requiring individual designation of conveyancers, Fireman's Fund may be held to have limited coverage under insurance

agreement (A) to "employees" within the ordinary meaning of the word. *Cf. Morfoot v. Stake,* 174 Ohio St. 506, 190 N.E.2d 573 (1963). Since right to control is the hallmark of an employer-employee relationship, the exposure of Fireman's Fund may not be expanded by construing the bond to cover the acts of persons who performed services for the Association but were not subject to such control. There is no such ambiguity in the language of the bond as to require a construction in favor of the insured. *See Trinity Universal Insurance Co. v. Cincinnati Insurance Co.,* 513 F.2d 915 (6th Cir. 1975).

■ The finding of the district court that Rogers was an employee within the bond does not detail the evidence upon which it was based. No reference is made to testimony or other evidence which established that the Association had the "right to control the mode or manner of doing the work . . .," *Councell, supra.* We have searched the record and have found no substantial evidence that the Association exercised or claimed the right to exercise control over the manner in which Rogers carried out inspections. There is no evidence that the Association gave Rogers instructions or directions as to how the inspections should be performed. He was an experienced real estate broker and appraiser, and the Association appears to have relied on this experience.

When viewed in the light of clearly established principles of the governing law of Ohio, the testimony and documentary evidence together with the reasonable inferences which might be drawn therefrom point to the conclusion that James F. Rogers was not an employee of Third Federal Savings & Loan Association within the meaning of the Fireman's Fund bond. The finding of the trial court on this question is binding on this court unless it is clearly erroneous. Rule 52(a), Fed.R. Civ.P. In *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), the Supreme Court wrote:

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

We have such a conviction in this case, based on the entire record.

The ten construction loan losses for which the district court awarded damages all represented residences which were only partially completed or on which no work had been done. The court held that there could be no recovery for losses from two construction loans on property on Kenilworth and Willard Avenue. Construction was completed on both of these residences and it was not claimed that dishonesty of an inspector had caused the losses. The Association's claims were based on fraudulent misrepresentations by the president of Mogilnicki. The bond, in insuring agreement (E), provided coverage for loss of property through any form of fraud or dishonesty by any person. Fireman's Fund contended, and the district court agreed, that recovery for the Kenilworth and Willard Avenue losses was precluded by exclusion 2(d), which provides:

EXCLUSIONS

Section 2. This Bond Does Not Cover:

\* \* \* \* \* \*

(d) Any loss the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or dishonesty, except when covered by Insuring Agreement (A) [employee dishonesty] or (D) [forgery].

The Association has not appealed from this determination.

The district court concluded, however, that exclusion clause 2(d) did not apply to the property at 164 Joseph Street, upon which the Association had not made a construction loan, and found liability under insuring agreement (E). In this instance the Association provided permanent financing to the purchaser of the completed residence. It was discovered later that Mogilnicki had failed to pay all the suppliers of

labor and material. The Association paid off mechanics' liens after taking title from the purchaser, and eventually resold the property at a loss. The loss did not result from employee dishonesty or forgery, the exceptions to operation of exclusion clause 2(d).

■ The presence of exclusion clause 2(d) precludes the treatment of the bond as credit insurance. Yet the actual cause of the Association's loss on the Joseph Street property was a defect in the purchaser's title to the property mortgaged to the Association as security for its loan. The reasoning of the court in *First National Bank of Memphis v. Aetna Casualty & Surety Co.,* 309 F.2d 702 (6th Cir. 1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963), applies with equal force to this case. It is clear from the language of exclusion clause 2(d) that it applies to losses on loans induced by fraud if the losses are actually the result of default. *See Community Fed. Sav. & L. v. General Casualty Co.,* 274 F.2d 620, 625 (8th Cir. 1960). Thus, even though Mogilnicki may have acted fraudulently in deeding the property to the purchaser without paying the suppliers of labor and materials, this fraud did not remove the Association's ultimate loss on the loan from the terms of the exclusion.

The judgment of the district court is reversed with directions that the complaint and third party complaints be dismissed. The appellants Fireman's Fund Insurance Company and James F. Rogers will recover their costs on appeal.