INTERSTATE PRODUCTION CREDIT
ASSOCIATION, a federally chartered
corporation, Plaintiff,

v.

FIREMAN'S FUND INSURANCE
COMPANY, a California
corporation, Defendant.

Civ. No. 87–1417–FR.

United States District Court,
D. Oregon.

March 3, 1989.

Barry P. Caplan, Richard G. Spier, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for plaintiff.

James L. Knoll, Loren D. Podwill, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matters before the court are the cross-motions for summary judgment on coverage issues filed by plaintiff, Interstate Production Credit Association (IPCA) (#35), and defendant, Fireman's Fund Insurance Company (Fireman's Fund) (#37).

This court granted Fireman's Fund's motion to bifurcate the issue of coverage for the purpose of discovery and summary judgment. The parties then filed these cross-motions for summary judgment on the issue of whether any losses caused by John C. Courtright are covered by a Farm Credit Services Blanket Bond, Bond No. HF 540 1060 (the Bond). IPCA seeks payment of ten million dollars under the Bond issued by Fireman's Fund to IPCA's predecessor in interest, Northwest Livestock Production Credit Association (NLPCA). The Bond was in effect from January 1, 1984 through June 22, 1985.

The Bond covers losses incurred through the dishonest or fraudulent acts of the employees of IPCA. Fireman's Fund contends that Courtright is not an "employee" within the terms of the Bond. IPCA contends that Courtright fits within the Bond's definition of "employee."

Courtright became a director of NLPCA in 1982. Courtright and CCC, which he controls, received loans from NLPCA before and during the time that Courtright was a director of NLPCA. Courtright misrepresented to NLPCA the number of cattle owned by CCC in order to collateralize loans and loan renewals. NLPCA issued and renewed loans to CCC based on the false representations made by Courtright.

## DISCUSSION

Fireman's Fund and IPCA each rely on the language of the Bond. The "Insuring Agreements" section of the Bond contains the following provisions:

## A. FIDELITY

Any direct financial loss through any dishonest or fraudulent act of any employee(s), as hereinafter defined, committed anywhere and whether committed alone or in collusion with others, including loss, through any such act of any of the employees, or property held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor.

. . . .

For purposes of this bond, dishonest or fraudulent acts as used in Insuring Agreement A., shall also mean acts committed by an employee who KNOWINGLY, having authority to accept or approve an application for a loan or extension thereof or *an employee who KNOWINGLY furnishes information upon which the acceptance or approval of an application for a loan or extension thereof is based,* (but in no other instance), *fraudulently, dishonestly, and KNOWINGLY alters or causes to be altered, conceals or causes to be concealed, or omits or causes to be omitted material information on such application upon which the Insured shall and does rely in making or obtaining a loan or extension thereof.* (Emphasis added).

The highlighted language shows that the parties anticipated losses of the nature alleged by IPCA.[1] The issue before the court on this motion, however, is whether Courtright is an "employee" of IPCA as defined by the Bond. The "Definition" section of the Bond contains the following relevant language:

A. *Employee* means:

1) A director, officer or other employee of the Insured, while employed in, at, or by any of the Insured's offices or premises covered hereunder . . .

2) A director or trustee of the Insured, whether compensated or not, when performing acts coming within the scope of the usual duties of an officer or employee or member of any committee duly elected or appointed to examine or audit or have custody of the property of the Insured.

A rider to the Bond contains an additional definition of "employee:"

1. The word Employee, as used in the attached bond, shall also include any natural person who is a director or trustee of the Insured while such director or trustee is engaged in handling funds or other property of any Employee Welfare or Pension Benefit Plan owned, controlled or operated by the Insured.

IPCA contends that Courtright is covered under subsection 1) of the definition of "employee." IPCA does not contend that Courtright performed acts coming within the scope of the usual duties of an officer or employee as required by subsection 2). IPCA does not contend that Courtright is covered under the rider to the Bond. Thus, the issue before the court is whether Courtright committed dishonest or fraudulent acts while he was a director employed in, at, or by any of NLPCA's offices or premises.[2]

The meaning of the words "employed in, at, or by any of the Insured's offices or premises" is not explained in the Bond. Generally, the construction of a contract is a question of law to be decided by the court. *Timberline Equip. Co. v. St. Paul Fire and Marine Ins. Co.,* 281 Or. 639, 576 P.2d 1244, 1246 (1978). However, if the court determines that a provision in a contract is ambiguous, the meaning of that provision is a question of fact. *Id.* A contract provision is ambiguous only if it is

---

1. Fireman's Fund reserves the right to contest the facts regarding the nature and amount of the alleged loss, but such issues are beyond the scope of this motion.

3. Fireman's Fund has filed the affidavit of a linguist, Sandra Oster, Ph.D., who expresses an opinion regarding the meaning of subsections 1) and 2). IPCA moves to strike this affidavit on the grounds that the legal issue of ambiguity is for the court to determine, not an "expert." The court recognizes that legal issues are for it to decide. However, the opinion of an expert may be of some value in the interpretation of contractual provisions, as in other areas. Therefore, the motion to strike is denied.

amenable to more than one reasonable interpretation. *Ross Bros. Constr. Co. v. Oregon*, 59 Or.App. 374, 650 P.2d 1080 (1982).

Fireman's Fund cites a number of decisions from various jurisdictions which interpret language similar to subsection 1). However, in each of those cases, the language was part of a standard form insurance contract, and the language was more restrictive than the definition of employee in the Bond. For instance, none of the cases cited by Fireman's Fund concerns a policy which includes "directors" in the "in, at, or by" clause as the Bond here does.

Decisions based on the interpretation of standard forms are of limited value here because the undisputed fact is that NLPCA presented Fireman's Fund with a nonstandard draft bond which combined and modified language used in standard forms, and that this draft bond became the basis for the Bond. There are controverted issues of fact regarding the parties' understandings and intent during the negotiation process.

■ Fireman's Fund argues that the words "employed in, at, or by any of the Insured's offices or premises" means that there is coverage for a director only when he performs services of the type normally performed by officers or employees. However, Fireman's Fund's interpretation would mean that there is virtually no distinction between subsections 1) and 2). A contract should be interpreted to avoid inconsistencies and to give meaning to all of its terms. *Standley v. Standley*, 90 Or. App. 552, 556, 752 P.2d 1284 (1988).

The court finds that the Bond is not ambiguous, and that the meaning of subsection 1) can be determined from the face of the Bond. The court finds that subsection 1) covers directors while they are performing functions as directors, in contrast to subsection 2), which covers directors who perform acts normally done by officers or employees. This interpretation gives meaning to both subsections.

■ Fireman's Fund contends that Courtright made the fraudulent representations on behalf of CCC while acting in the capacity of a borrower from NLPCA and not as a director of NLPCA. IPCA argues that even if Courtright was not acting in his capacity as a director of NLPCA when he made the fraudulent representations, he violated his duty as a director by concealing the false representations and thus committed dishonest or fraudulent acts while employed as a director of NLPCA.

The court finds that there is a genuine issue of material fact on the issue of whether Courtright committed any dishonest or fraudulent acts while acting in his capacity as a director of NLPCA because the record is inconclusive regarding the duties performed by directors of NLPCA, including Courtright, during the relevant time period.

In addition, there is evidence that Courtright was a member of a loan committee for NLPCA. There is an issue of fact as to whether Courtright used his position as a member of a loan committee for NLPCA or his status as a director of NLPCA to influence the handling of the loans and extensions of loans to CCC.

Genuine issues of material fact preclude an order of summary judgment at this time. The motion for summary judgment of Fireman's Fund (# 37) is denied. The motion for partial summary judgment of IPCA (# 35) is denied.