## INTERSTATE PRODUCTION CREDIT ASSOCIATION, Plaintiff–Appellant,

v.

## FIREMAN'S FUND INSURANCE COMPANY, Defendant– Appellee.

### No. 90–35367.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1991.

Decided Sept. 11, 1991.

Barry P. Caplan and Richard G. Spier, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for plaintiff-appellant.

I. Franklin Hunsaker, James L. Knoll, Loren D. Podwill, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant-appellee.

---

Before GOODWIN, ALARCON and HALL, Circuit Judges.

ALARCON, Circuit Judge:

The Interstate Production Credit Association (IPCA) appeals from the order granting summary judgment in favor of Fireman's Fund Insurance Company (Fireman's Fund). Fireman's Fund asks us to reverse the order granting partial summary judgment in favor of IPCA.

We must decide whether Fireman's Fund is liable, under the special terms of its fidelity bond, for losses suffered by IPCA resulting from loans made to a borrower corporation controlled by a director who failed to disclose to the production credit association that, acting as an officer of the borrower corporation, he had falsely represented the amount of collateral.

We conclude that the district court correctly determined that the term "employee," as defined in the bond, included directors, but erred in ruling that the agreement did not cover a director's breach of his fiduciary duty in failing to disclose his fraudulent conduct as an officer of the borrower and as guarantor of the loan.

## I

### PERTINENT FACTS AND PROCEDURAL POSTURE

In 1971, Congress established the Farm Credit System to serve the credit needs of farmers and ranchers. The program was designed

> to encourage farmer- and rancher-borrowers' participation in the management, control, and ownership of a permanent system of credit for agriculture that will be responsive to the credit needs of all types of agricultural producers....

12 U.S.C. § 2001(b).

The Farm Credit System includes Farm Credit Banks, Federal land banks associations, and production credit associations. 12 U.S.C. § 2002. "Production credit asso-

ciations can be organized by 10 or more farmers or ranchers or producers or harvesters of aquatic products desiring to borrow money...." 12 U.S.C. § 2071(b)(1). Each organizer of a production credit association must establish his or her "eligibility to borrow from the association in which such person will become a stockholder." 12 U.S.C. § 2071(b)(4). Each proposed association must subscribe for stock in a Farm Credit Bank. 12 U.S.C. § 2071.

IPCA is a production credit association organized to provide loans to its members under the Farm Credit Act of 1971, 12 U.S.C. § 2001 *et seq.*

Fireman's Fund issued a fidelity bond to IPCA's predecessor in interest, Northwest Livestock Production Credit Association (NLPCA), on January 1, 1984. The bond covered financial losses up to $10,000,-000.00 for "[a]ny direct financial loss through any dishonest or fraudulent act of any employee...."

The bond also provided that it covered losses "sustained by the insured at any time, but discovered during the policy period or extended discovery period...." The bond was canceled by Fireman's Fund on June 22, 1985. IPCA exercised its option to purchase a 24–month extended discovery period.

John Calvin Courtright was the president and principal stockholder of the Courtright Cattle Company (CCC). His wife was the secretary of CCC. Courtright became a member of the board of directors (Board) of IPCA's predecessor in interest, the NLPCA. He remained a director until the fall of 1985.

The NLPCA began lending money to CCC in the 1970's. Courtright was a guarantor on the loans and the loan extensions. During the periods of time covered by the bond, Courtright falsified loan documents by inflating the cattle inventory of CCC. As a result of Courtright's fraudulent representations as an officer of CCC and his failure as a director of NLPCA to disclose this dishonesty to the Board, IPCA alleges that it suffered losses in excess of ten million dollars. The fraud was discovered

after Courtright disappeared in January, 1986. Upon discovering that Courtright was missing, IPCA attempted, unsuccessfully, to recover on its loans. IPCA gave notice of its claim on the bond in February, 1986. The proof of loss was submitted in January, 1987.

Fireman's Fund refused to pay on IPCA's claim of a ten-million dollar loss resulting from Courtright's fraudulent misrepresentation as an officer of CCC and the breach of his duty, as a director of NLPCA, to disclose his knowledge of this fraud. This action was filed on December 22, 1987.

Cross motions for a summary judgment were filed on January 20, 1989. The question presented to the district court was whether any of the losses, caused by Courtright's failure to disclose to the Board his fraudulent representations in the loan applications, were covered by the bond. Fireman's Fund argued that Courtright was not an employee under the terms of the bond.

Granting a partial summary judgment to IPCA, the district court ruled that the word "employee," as used in the bond, covered the actions of directors. *Interstate Production Credit Ass'n v. Fireman's Fund Ins. Co.*, 706 F.Supp. 1405, 1407 (D.Or. 1989). The court also held that there was a genuine issue of material fact in dispute "on the issue of whether Courtright committed any dishonest or fraudulent acts while acting as a director of NLPCA...." *Id.* Accordingly, the district court denied each motion for summary judgment. *Id.*

New cross motions for summary judgment were filed on January 16, 1990. IPCA argued that Fireman's Fund was liable for the losses caused by Courtright's breach of his fiduciary duty to report to the commission the fraud he perpetrated as an officer of CCC. Fireman's Fund contended that Courtright did not commit any dishonest or fraudulent act while acting in his capacity as a director of IPCA. In a pub-

lished opinion, the district court granted Fireman's Fund's motion for a summary judgment and denied IPCA's cross motion for a summary judgment in a published opinion. *Interstate Production Credit Ass'n v. Fireman's Fund Ins. Co.*, 736 F.Supp. 225, 233 (D.Or.1990). The court based its ruling on the fact that "IPCA has produced no evidence which could support an inference that Courtright, as a director, influenced the treatment of loans or the loan extensions to CCC." *Id.* A final judgment was entered on March 29, 1990.

Fireman's Fund seeks reversal of the partial summary judgment in favor of IPCA.[1] IPCA appeals from the summary judgment entered in favor of Fireman's Fund that finally disposed of this action, and the denial of its cross-motion for summary judgment.

## II

## DISCUSSION

As discussed above, the district court ruled that the term "employee," as used in the bond, covers the actions of directors. The bond defines the term employee in separate subsections:

1) *A director,* officer, or other employee of the Insured *while employed in, at, or by any of the* Insured's *offices or premises covered hereunder....* and a guest student pursuing studies or duties in any of said offices or premises,

2) *A director* or trustee *of the Insured, whether compensated or not, when performing acts coming within the scope of the usual duties of an officer or employee* or member of any committee duly elected or appointed to examine or audit or have custody of the property insured.

(emphasis added). The interpretation of a contract is a question of law we review *de novo. L.K. Comstock Co. v. United Eng'rs & Constructors, Inc.*, 880 F.2d 219, 221 (9th Cir.1989).

---

**1.** Fireman's Fund did not file a notice of appeal from the district court's partial summary judgment in favor of IPCA. Nevertheless, the issue is properly before us because "[a]n appeal from

a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment." *Litchfield v. Spielberg,* 736 F.2d 1352, 1355 (9th Cir.1984).

The district court held that subsection one "covers directors while they are performing functions as directors." *Interstate Production Credit Ass'n,* 706 F.Supp. at 1407. The district court rejected Fireman's Fund's argument that the words "employed in, at, or by any of the Insured's officers or premises" should be read to limit coverage to services normally performed by officers or employees. *Id.* Fireman's Fund's interpretation would render subsection one superfluous since subsection two specifically covers directors when they perform the duties of an officer or an employee. The district court's interpretation "gives meaning to both such sections." *Id.* The district court did not err in granting partial summary judgment in favor of IPCA on this issue.

### A. Coverage of Breach of Fiduciary Duty to Disclose

IPCA asserts that it lost over ten million dollars in uncollectable loans because Courtright failed to disclose to the Board that CCC's collateral was fraudulently represented. Fireman's Fund contends that the bond does not cover Courtright's fraudulent representation, as an officer of CCC, because that conduct did not occur while he was performing the duties of a director. Fireman's Fund also asserts that "the conduct of Courtright in performing functions as a director of NLPCA was not the cause in fact of or a substantial factor in causing the loss on the CCC loans...." Appellee's Brief at 12. We disagree. Fireman's Fund's argument ignores the fact that had Courtright informed the Board of his fraudulent representations concerning the collateral, the loans to CCC would not have been approved.

The bond provides coverage for financial losses as follows:

Any direct financial loss through any dishonest or fraudulent act of any employee(s), as hereinafter defined committed anywhere and whether committed alone or in collusion with others, including loss, through any such act of any of the employees or property held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor.

. . . . .

For purposes of this bond, dishonest or fraudulent acts as used in Insuring Agreement A., shall also mean acts committed by an employee who KNOWINGLY, having authority to accept or approve an application for a loan or extension thereof or an *employee who KNOWINGLY furnishes information upon which the acceptance or approval of an application for a loan or extension thereof is based,* (but in no other instance), *fraudulently, dishonestly, and KNOWINGLY alters or causes to be altered, conceals or causes to be concealed, or omits or causes to be omitted material information on such application upon which the Insured shall and does rely in making or obtaining a loan or extension thereof.* (Emphasis added).

The terms of the bond require proof of a direct financial loss through any dishonest act of an employee. The agreement does not require that the director's dishonesty be the sole cause of a direct financial loss. Courtright's failure to disclose the fraud perpetrated in obtaining loans, and loan extensions, for CCC caused a direct financial loss to IPCA.

Federal regulations and case law require a director to inform the corporation of any fraud that may adversely affect corporate decision making. 12 C.F.R. § 617.7110(a) (employee or director has a duty to report any irregularity or possible violation of Federal criminal statutes); *Wooddale, Inc. v. Fidelity & Deposit Co.,* 378 F.2d 627, 634 (8th Cir.1967) ("knowledge and acquiescence by an officer of the corporation in his or another's dishonest activities in any other capacity *to the detriment of the corporation* constitutes, as a matter of law, a breach of his fiduciary duty") (emphasis in original).

Our view that a director has a fiduciary duty to disclose dishonest acts is supported by decisions from those circuits that have

confronted similar issues. Each has concluded that an "employee's" failure to disclose dishonesty in dealing with a corporation is covered under fidelity bonds with comparable terms.

In *Howard, Weil, Labouisse, Friedrichs, Inc. v. Ins. Co.*, 557 F.2d 1055 (5th Cir. 1977), Latham, an employee of a stock brokerage house, made a series of losing trades on his own account. He covered the losses with checks drawn on an account that he knew contained insufficient funds. *Id.* at 1057. The Fifth Circuit rejected the Insurance Company's argument that the bond did not cover the losses because the employee was acting as a customer when he wrote the bad checks rather than an employee. The court noted that the bond covered "loss through any dishonest or fraudulent act of any of the employees ... and committed directly or by collusion with others." *Id.* at 1058. The Fifth Circuit held that

> [t]his language would clearly embrace a collusive broker-customer arrangement to allow the customer to speculate at the expense of the broker's employer with bad checks. If the broker carried out such a scheme to the detriment of his employer, thus breaching a fiduciary obligation implicit in his employment, any loss incurred by his employer would unquestionably fall within the employee dishonesty coverage of the bond. The only difference between this example and the case before us is that here the broker and the customer are one and the same. We can see no legal distinction in the behavior of the broker in the two situations. Each constitutes employee fraud or dishonesty.

*Id.*

In *Wooddale, Inc. v. Fidelity Deposit Co.*, 378 F.2d 627 (8th Cir.1967), the Eighth Circuit was faced with a similar question. Caldbeck was the President of Caldbeck, Inc., a general contractor, and the owner of Caldbeck Construction Co., a sub-contractor. He was bonded as president of Caldbeck, Inc., under a policy that defined "employee" as "any natural person ... while in the regular service of the Insured in the

ordinary course of the Insured's business ... and whom the insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service...." *Id.* at 630. Caldbeck, Inc., had a contract with Caldbeck Construction which called for periodic payments to Caldbeck Construction "to be applied for payment of materials and labor" for the particular project. Caldbeck wrote and signed checks from Caldbeck, Inc., to Caldbeck Construction under this provision. At the time he wrote the checks, Caldbeck knew that he had misappropriated funds from previous checks for his own use and general expenses of Caldbeck Construction. Caldbeck, Inc., lost over $15,000. In a suit for reimbursement on the bond, the trial court granted summary judgment for Fidelity Deposit on the ground that Caldbeck was an "independent contractor" and not covered under the bond. *Id.*

The court observed that "[i]mplicit in the [district] court's holding ... is that the loss occurred in Caldbeck's capacity as a contractor rather than in the performance of his fiduciary duties for the corporation." *Id.* at 633. In explaining its decision to reverse, the Eighth Circuit held that, by writing the checks when he was aware of the earlier misappropriation of funds, Caldbeck had breached his fiduciary duty to the corporation. *Id.* at 633–34. The court explained its holding as follows:

> The lower court viewed this simply as a breach of contract by Caldbeck Construction Company with the corporation. However, knowledge and acquiescence in his or another's dishonest activities in any other capacity *to the detriment of the corporation* constitutes, as a matter of law, a breach of his fiduciary duty to the corporation.

*Id.* at 634 (emphasis in original). In a later passage, the court stated:

> The situation is no different than if Caldbeck as President of Caldbeck, Inc. was issuing checks to another contractor in privity with the corporation, who with the full knowledge of Caldbeck was misappropriating the money and not paying the obligations invoiced.... [U]nder

such circumstances it would be obvious that he had breached his fiduciary capacity or duties.... The acts of Caldbeck, the individual, known to Caldbeck, as President, constituted a failure to faithfully discharge his fiduciary duties as President of the Corporation and renders the surety liable under the bond.

*Id.*

In *Maryland Casualty Co. v. First Nat'l Bank,* 246 F. 892 (5th Cir.1918), *cert. denied* 246 U.S. 670, 38 S.Ct. 345, 62 L.Ed. 931 (1918), Campbell was both the president and bookkeeper of First National Bank. Campbell was bonded as president, but not as bookkeeper. The bond insured the bank against loss "sustained by reason of any act or acts of Fraud, Dishonesty, Forgery, Embezzlement, Wrongful Abstraction or Wilfull Misapplication on the part of any Employee (while in any position in the service of the Employer and committed directly or through connivance with others)." *Id.* at 894. Campbell embezzled over $20,000 and the bank sued on the bond. Maryland Casualty denied coverage, asserting the embezzlement had been as bookkeeper rather than president. In rejecting this contention, the Fifth Circuit stated:

> Nothing in the terms of the contract confines the losses insured against to such as resulted from acts of fraud, dishonesty, etc., committed by the employee while in the performance of service for which he was employed.... The language is broad enough to cover a loss due to the fraud or dishonesty of a named employee, though his misconduct was in a dealing between him and his employer not connected with the rendition of the service for which he was employed.

*Id.* at 900–01.

Fireman's Fund asserts that *Third Fed. S. & L. Ass'n v. Fireman's Fund Ins.,* 548 F.2d 166 (6th Cir.1976), supports its position that the losses claimed by IPCA were not caused by dishonest or fraudulent conduct covered by the bond. *Third Fed.* is completely inapposite. In *Third Fed.,* the question before the court was whether the individual who committed the fraud was an employee in *any* capacity, not whether a breach of fiduciary duty by an employee would be covered under the bond. *Id.* at 169–171. The Sixth Circuit held that the individual who committed the fraud was an independent contractor not covered by the bond. *Id.* at 171. In the instant case, it is undisputed that Courtright was a director, and, therefore, an employee of NLPCA.

Fireman's Fund also relies on several cases involving criminal charges for misapplication of funds by bank employees or directors. These decisions shed no light on the question we must resolve. They involve the interpretation of the text of specific criminal statutes that are unrelated to any of the issues in this case.

The district court erred in concluding that the direct financial loss to IPCA that resulted from Courtright's failure to disclose his dishonest acts to the board of directors was not covered by the bond. Accordingly, we do not reach IPCA's alternative argument that Courtright overtly used his position as director to influence approval of the loans or loan extensions to CCC.

The order granting Fireman's Fund's motion for summary judgment on the question whether Fireman's Fund is liable under the bond for Courtright's failure to disclose his knowledge of the fraudulent representations in CCC's loan applications is REVERSED. The district court's order denying IPCA's motion for a summary judgment on this issue is REVERSED. The matter is REMANDED to the district court with directions to enter an order granting partial summary judgment in favor of IPCA on this issue.