**BANK OF CUMBERLAND,**
**Plaintiff–Appellee,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant and Third Party Plaintiff–Appellant,**

**Myrtle S. Blakley, Executrix of the Estate of Alton E. Blakley, deceased; et al., Third Party Defendants.**

**No. 90–6160.**

United States Court of Appeals, Sixth Circuit.

Argued July 30, 1991.

Decided Feb. 11, 1992.

Charles M. Pritchett, Brown, Todd & Heyburn, Louisville, Ky., Stephen B. Catron (briefed), Linda B. Thomas (argued), Reynolds, Catron, Johnston & Hinton, Bowling Green, Ky., for plaintiff-appellee.

Samuel L. Akers, William B. Luther, Shane Usary, Luther, Anderson, Cleary, Ruth & Speed, Chattanooga, Tenn., Thomas N. Kerrick, Campbell, Kerrick & Grise, Bowling Green, Ky., Larry L. Simms (briefed), Bradford R. Clark (argued), Jeanne M. Hauch, Gibson, Dunn & Crutcher, Washington, D.C., for defendant and third party plaintiff-appellant and third party defendants.

Before NELSON and SUHRHEINRICH, Circuit Judges, and HARVEY, Senior District Judge.*

SUHRHEINRICH, Circuit Judge.

Defendant Aetna Casualty and Surety Company ("Aetna"), appeals the jury verdict for plaintiff, Bank of Cumberland ("BOC"), in this diversity insurance action. Specifically, Aetna argues that the district court erred in failing to grant Aetna's motion for judgment notwithstanding the verdict ("JNOV"). For the reasons that follow, the judgment entered below is REVERSED.

I

C.H. Butcher, Jr. owned a large number of banks throughout Kentucky and Tennessee (collectively "Butcher Banks"). In 1981, he and Alton E. Blakley purchased equal shares in BOC. Blakley became chairman of the BOC board of directors.

On December 9, 1981, BOC purchased a Bankers Blanket Bond and an Excess Bank Employee Dishonesty Bond (collectively "the bonds") from Aetna, by which Aetna promised to indemnify BOC for losses resulting from fraudulent and dishonest acts of BOC employees discovered during the period of coverage.[1] In order to recover under the bonds, BOC is required to prove that the individual who caused the loss is an "employee" of BOC. The bonds define an employee as "an officer or other employee of the insured while employed in, at, or by any of the Insured's offices or premises covered hereunder...." The bonds specifically exclude from coverage any "loss resulting directly or indirectly from any acts of any director of the Insured other than one employed as a salaried, pensioned or elected official or an Employee of the Insured...."

Also in 1981, Butcher appointed his friend Emmett J. Foster, the individual BOC claims caused its losses, to serve as his representative on BOC's board of directors. Foster was a member of the BOC board and executive committee from January 23, 1981 to May 14, 1981; and from August 12, 1982, through mid–1983. During this time Foster was also president of the City and County Interstate Financial Corporation ("CNCIFC"), which contracted to make credit and management decisions for BOC and other Butcher Banks from November 11, 1982 through March 31, 1983. As president of CNCIFC, Foster matched loan requests with participating Butcher Banks based on such factors as loan demands, risk, and the financial situation of the particular bank. BOC regularly accepted Foster's recommendation for booking and renewing loans from out-of-territory borrowers, and typically did so without reviewing in advance loan documents or file financial information.

In mid–1982, some of the Butcher Banks began to experience financial problems. In late October and early November of 1982, a number of these banks were subjected to simultaneous examinations by the Federal Deposit Insurance Corporation ("FDIC"). The purpose of these simultaneous examinations was to identify loans which had evaded individual examinations by being "shifted" among the Butcher Banks.

In late February 1983, the FDIC notified BOC of charges against it as a result of the out-of-territory loans, and that the FDIC would seek a cease-and-desist order against BOC. On March 2, 1983, state and federal regulators met with BOC's board of directors to address BOC's situation. On April 15, 1983, the FDIC again sent a letter to BOC attacking its lending practices.

The FDIC conducted another examination of BOC on April 29, 1983 and discovered further deterioration in the credit quality of BOC's loan portfolio. In May 1983, BOC became formally insolvent as a result of the need to charge off as losses the out-of-territory loans. After investigation, BOC's attorneys concluded that the losses suffered by BOC might be cognizable un-

* The Honorable James Harvey, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The parties agree that the "Bankers Blanket Bond" and the "Excess Fidelity Bond" impose the same requirements with regard to the provisions at issue here.

der the bonds because Foster's acts apparently were dishonest and fraudulent. Foster's apparent intent was to cause BOC to sustain losses and to obtain benefit for Butcher, his friends, and his business associates. On November 17, 1983, BOC gave letter notice to Aetna of its bond claims on the loan losses.

On January 18, 1985, BOC sued Aetna, asserting that Foster's conduct was actionable under the bonds. The jury returned a verdict in favor of BOC, concluding, *inter alia*, that: (1) Foster was an "employee" of BOC; (2) Foster's failure to inform BOC's board of information concerning the disputed out-of-territory loans was a "dishonest or fraudulent" act within the meaning of the bond; and (3) BOC promptly notified Aetna of the claim. BOC was awarded $1,500,000 plus interest. Shortly thereafter, Aetna filed a motion for JNOV or for a new trial, both of which the district court denied. This appeal followed.

## II

■ Aetna raises numerous arguments on appeal, but we need consider only one. Aetna contends that Foster was not an employee of BOC and therefore the district court erred in denying its motion for JNOV, brought under Fed.R.Civ.P. 50(b). Specifically, Aetna argues that BOC failed to present sufficient evidence that BOC controlled or could have controlled Foster's activities on its behalf. Aetna's theory is that Foster, as an employee of CNCIFC, acted as an independent contractor for BOC and not as an employee.[2]

■ In federal diversity cases, this court adheres to the rule that motions for directed verdicts and judgments notwithstanding the verdict are governed by state law. *J.C. Wyckoff & Asso. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1482 (6th Cir.1991). In evaluating a JNOV under Kentucky law a trial court is required to consider the evidence in the strongest possible light in favor of the party opposing

the motion and must give the opposing party the advantage of every fair and reasonable inference that can be drawn from the evidence. *Taylor v. Kennedy*, 700 S.W.2d 415, 417 (Ky.App.1985).

■ BOC concedes that control is a necessary element in establishing that Foster was an employee under the bonds. *See Kentucky Farm Bureau Mutual Ins. Co. v. Snell*, 319 S.W.2d 462, 465 (Ky.1958); *Blair v. Boggs*, 265 S.W.2d 795, 796 (Ky. 1954). *See also Third Federal Sav. and Loan Ass'n v. Fireman's Fund Ins. Co.*, 548 F.2d 166, 171 (6th Cir.1977) (in considering a bond similar to the one at issue here, this court noted that the "right to control is the hallmark of an employer-employee relationship"); *William H. Sill Mortgages v. Ohio Casualty Ins. Co.*, 412 F.2d 341, 344 (6th Cir.1969) ("[t]he principal test of an employer and employee relationship is control."). In order to satisfy its burden, BOC introduced evidence that Butcher, who was a part owner of BOC, exerted control and/or influence over Foster. Butcher testified by deposition that he "hired" and "employed" Foster and that he voted Foster onto the Board of Directors of several of his banks, including BOC, to represent his interests.

The fact that Foster was controlled by Butcher, however, does not necessarily establish that Foster was an employee of BOC, which was a separate legal entity from Butcher. *See Holsclaw v. Kenilworth Ins. Co.*, 644 S.W.2d 353, 355 (Ky. App.1982) (a corporation is normally considered a distinct entity from its shareholders, officers and directors); *White v. Winchester Land Development Corp.*, 584 S.W.2d 56 (Ky.App.1979) (courts are reluctant to disregard the corporate entity). Butcher's ownership of BOC is relevant only if Butcher acted as a manager or officer of BOC, *see Har–Bel Coal Co. v. Asher Coal Min. Co.*, 414 S.W.2d 128 (Ky. App.1966); or was somehow an "alter ego" of BOC. *See White*, 584 S.W.2d at 60–62.

---

**2.** It is well established that an independent contractor may act with the direct authority of another and carry out specific duties for another without being an "employee." *See King v.*

*Shelby Rural Elec. Cooperative Corp.*, 502 S.W.2d 659, 663 (Ky.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974).

It is undisputed in this record that Butcher was not an officer or manager of BOC. Further, there is no basis for finding, nor has BOC alleged, that Butcher was the alter ego of BOC.[3] Thus, the relationship between Foster and Butcher is not determinative of the relationship between Foster and BOC.

Finally, BOC has introduced no evidence that any BOC officer or supervisory agent gave Foster instructions, directions, or supervision concerning the performance of his duties; or that BOC otherwise had any right to control Foster's activities on behalf of the bank. Nor is there any evidence that inferentially establishes such a right to control. Therefore, a reasonable jury could only conclude that Foster acted as an independent contractor *for* BOC through the services of CNCIFC and not as an "employee" *of* BOC as required under the bonds.[4]

### III

In conclusion, we REVERSE the district court's denial of Aetna's motion for JNOV because BOC has failed to present sufficient evidence from which a jury could reasonably conclude that BOC controlled or could have controlled the activities of Foster. We therefore REMAND this case to the district court with directions to enter judgment for Aetna. Because of this disposition, we need not address Aetna's remaining arguments.

---

3. In fact, BOC opposed Aetna's efforts to assert an alter ego defense, because a finding of alter ego status would have resulted in no coverage under the bonds. *See FDIC v. Aetna Casualty & Sur. Co.,* 947 F.2d 196, 208–10 (6th Cir 1991) (remanding to the district court for consideration under Tennessee law of Aetna's claim that Butcher was the alter ego of a failed Tennessee bank).

4. It should also be noted that Foster's position as a BOC director does not provide a basis of recovery since the bonds specifically excepted losses suffered from the fraudulent acts of directors who were not also employees of BOC.